AMERICAN COMMERCE
INSURANCE COMPANY

v.

Sebastian M. PORTO et al.

No. 2001–80–Appeal.

Supreme Court of Rhode Island.

Dec. 26, 2002.

---

Mark J. Faria, Carol Nicholson Glick, Providence, for Plaintiff.

James T. Murphy/Frederic A. Marzilli/Jeffrey D. Sowa, Joel K. Gerstenblatt/Gregory A. Carrara/Andrew J. Murray, Sarah McConnell Dubois, for Defendant.

Present: WILLIAMS, C.J., and LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This is an insurance-coverage dispute concerning the scope of a policy provision excluding coverage for bodily injury claims arising out of "the actual, alleged or threatened sexual molestation of a person." The defendants, Sebastian M. Porto (Porto), the Boy Scouts of America, Narragansett Council (BSA),[1] and a member of

---

1. According to defendant Boy Scouts of America, Narragansett Council, there is no legal entity known as "Rhode Island Boy Scouts Troop 7 East Providence."

the BSA troop who was a minor when the alleged sexual molestation occurred (fictitiously referred to herein as "Jimmy") and his parents (collectively, the family), appeal from a grant of summary judgment in favor of the plaintiff insurer, American Commerce Insurance Company (ACIC). The Superior Court entered summary judgment for ACIC in response to a declaratory-judgment action that ACIC brought against the defendants. In that case, ACIC sought a declaration that it did not have a duty to defend or to indemnify its insured, Porto, in connection with the underlying negligence action that the family had filed against Porto and others after a Boy Scout troop leader that Porto supervised allegedly sexually molested Jimmy when he was a member of the troop.

### Facts and Travel

Beginning on September 8, 1994, ACIC insured Porto under a contract of insurance entitled "Home–Master Policy." While ACIC insured him, Porto was a Boy Scout leader with Troop 7 in East Providence, where he allegedly supervised another troop leader, defendant Marc K. Abbott (Abbott). Jimmy, then a minor, was a member of the troop.

On August 19, 1999, Jimmy and his parents filed a Superior Court complaint against defendants BSA, Porto, and Abbott. They alleged that Jimmy's troop leader, Abbott, sexually assaulted Jimmy while Abbott was under Porto's supervision, thereby causing Jimmy to suffer damages for, *inter alia*, bodily injuries. His parents sought damages for their alleged loss of consortium.

The complaint also alleged that Porto and BSA were negligent in hiring and supervising Abbott. The family asserted that Porto knew or should have known of Abbott's propensity for engaging in inappropriate sexual contact with boys such as Jimmy, and that Porto and BSA owed them a duty to prevent such misconduct. The family also alleged that Porto should have used reasonable care in the selection of troop leaders and that he was under a duty to reject individuals such as Abbott who might engage in inappropriate sexual conduct with Scouts under their supervision. Additionally, the family alleged that, as a Scout leader, Porto had a duty to educate his troop members, including Jimmy, about how to avoid or to cope with inappropriate situations of a sexual nature, such as those alleged in this case. The family also averred that Porto failed to provide such education to Jimmy and to the other members of Troop 7. Porto, through his attorney, sought to have ACIC defend and indemnify him with respect to those allegations in the family's complaint that pertained to him.

In a separate Superior Court action filed on March 1, 2000, ACIC sought declaratory relief concerning whether it was obliged to cover Porto under the liability provisions of the policy and whether it was required to defend or to indemnify Porto against the family's claims in the underlying lawsuit. In due course, ACIC obtained summary judgment and a declaratory judgment entered granting the motion "against the defendants as to all counts." The motion justice concluded that ACIC had no duty to defend or to indemnify Porto because the policy excluded coverage for a bodily injury claim that "arises out of * * * the actual, alleged or threatened sexual molestation of a person."[2]

---

**2.** As the motion justice observed, ACIC included the relevant exclusionary language in the policy's definition of "bodily injury" rather than in the section entitled "Exclusions that Apply to Liability Coverages." But the insurer's placement of this exclusionary language within the definition section of the policy does not diminish the effectiveness of this

The trial justice found that "this complaint plainly alleges injury, bodily injury, flowing from a sexual molestation and the incidents that are related to that."

On appeal, defendants argue that the trial justice erred in granting summary judgment in favor of ACIC. Porto contends that the policy's exclusion for a bodily injury claim arising from the "actual, alleged or threatened sexual molestation of a person" is inapplicable to his situation. He maintains that his potential liability to the family arises from his alleged negligent failure to properly supervise Abbott—but not from Abbott's sexual assault against Jimmy. The BSA argues that the motion justice erred in failing to adhere to the "pleadings test" and in concluding that all the family's damages arose out of the alleged sexual assault. It suggests that the insurance policy's exclusion does not prohibit coverage for the non-physical injuries alleged by the family, such as those claims against Porto for injuries to the family arising from his alleged negligence in failing to educate Jimmy about how to avoid attempted sexual molestation and cope with exposure to pornography and live sexual acts. These occurrences, BSA avers, do not include physical contact between Abbott and Jimmy, and thus cannot be considered "sexual molestation" under the policy.

The family also argues that the motion justice's interpretation of the insurance policy was erroneous. They maintain that this Court has not yet rendered an opinion concerning whether a sexual-molestation exclusion prohibits coverage for claims against alleged negligent supervisors of

sexual molesters. The family argues that public policy favors coverage in this situation to prevent ACIC from escaping liability for its insured's negligence simply because the injuries at issue involve another individual's alleged sexual abuse.

ACIC agrees that an insurer's duty to defend its insured is determined by the pleadings test. It argues, however, that this Court has recognized an exception to that rule in cases involving civil actions for damages flowing from an alleged sexual molestation. If Porto had been the perpetrator of the alleged molestation, ACIC argues, there would clearly be no coverage for Porto under the holdings in *Peerless Insurance Co. v. Viegas*, 667 A.2d 785, 789 (R.I.1995) and *Craven v. Metropolitan Property and Casualty Insurance Co.*, 693 A.2d 1022, 1022–23 (R.I.1997) (mem.). It also suggests that, under the plain language in its insurance policy, the sexual-molestation exclusion from the definition of covered bodily injury claims applies to this case. Specifically, ACIC argues that the policy's definition of bodily injury excludes coverage for bodily harm that arises out of "the actual, alleged or threatened sexual molestation of a person." Relying on numerous cases from other jurisdictions, it maintains that we should afford a broad interpretation to the policy term "arising out of," thereby precluding coverage in this case. It also contends that the family's claims for bodily injury, whether allegedly resulting from physical contact or not, "arise out of" Jimmy's sexual molestation and fall within the plain meaning of "sexual molestation" as that term is commonly

language as a limitation on the coverage. *See Allstate Insurance Co. v. Bates,* 185 F.Supp.2d 607, 613 (E.D.N.C.2000) (holding that explicit language in a definitional section excluding injuries related to sexual molestation "specifically ties the sexual molestation exclusion to the nature of the [excluded] injur[ies]"); *Met-*

*ropolitan Property and Casualty Insurance Co. v. Miller,* 589 N.W.2d 297, 300 (Minn.1999) (holding that the plain language of a definitional exclusion precluded coverage for all injuries "in the form of sexual molestation," reflecting the parties' contractual intentions).

understood. Without Jimmy's alleged bodily injuries from Abbott's actual, alleged, or threatened sexual molestation of him, ACIC argues, there would be no bodily injuries whatsoever and, therefore, no basis for these claims. ACIC also posits that public-policy considerations do not require it to provide coverage in this type of case.

### Summary Judgment

■■■ When we review the grant of a summary judgment motion, we examine all the pleadings, memoranda, and evidence presented in the light most favorable to the nonmoving party to determine whether an issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. *Progressive Casualty Insurance Co. v. Narragansett Auto Sales,* 764 A.2d 722, 724 (R.I.2001) (per curiam). "In general, the duty to defend an insured in this jurisdiction is determined by applying the 'pleadings test.'" *Peerless Insurance Co.,* 667 A.2d at 787 (citing *Employers' Fire Insurance Co. v. Beals,* 103 R.I. 623, 240 A.2d 397 (1968)).

> "That test requires the trial court to look at the allegations contained in the complaint, and 'if the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff.' *Beals,* 103 R.I. at 632, 240 A.2d at 402. That duty, when blindly

applied, may certainly result in the defense of 'groundless, false or fraudulent' suits, but the insurer is duty bound nonetheless." *Peerless Insurance Co.,* 667 A.2d at 787.

In determining whether ACIC had a duty to defend its insured, Porto, in the underlying lawsuit, the motion justice examined the insurance policy and its relevant sections and compared the potential coverage and exclusion provisions therein to the allegations in the complaint. The relevant policy provisions were as follows:

> "Coverage L—Personal Liability—We pay, up to our limit, all sums for which an insured is liable by law because of bodily injury or property damage caused by an occurrence to which this coverage applies. We will defend a suit seeking damages if the suit resulted from bodily injury or property damage not excluded under this coverage.

> \*　　\*　　\*　　\*　　\*　　\*

> "Bodily injury means bodily harm to a person and includes sickness, disease or death. This also includes required care and loss of services. Bodily injury does not mean bodily harm, sickness, disease or death that arises out of:

> "a.　a communicable disease; or

> "b.　the actual, alleged or threatened sexual molestation of a person."

Here, the motion justice did in fact employ the "pleadings test" in examining the allegations contained in the complaint,[3] and

---

**3.** The family's complaint contained the following allegations concerning Jimmy's injuries and defendant Porto's negligence:

> "15.　While [Jimmy] was a minor member of Troop 7, Abbott sexually assaulted [Jimmy] by fondling him, engaging in oral sexual activity, and exposing [Jimmy] to pornography and live sexual acts, while ful-

filling his duties as a troop leader and/or assistant troop leader.

> \*　　\*　　\*　　\*　　\*　　\*

> "33.　Porto knew or should have known of Abbott's propensity for engaging in inappropriate sexual conduct and acts with troop members such as [Jimmy], and, as such, owed Plaintiffs a duty to engage, hire, supervise, train, and/or screen for individuals such as Abbott, and to prevent troop

in comparing them to the relevant terms of the policy. She focused on whether the family's bodily injury claims against Porto "arise[ ] out of the actual or threaten[ed] sexual molestation of a person." She stated:

> "I see it as plainly arising out of the actual or threatened sexual molestation of a person. I don't see a bunch of independent causes of action here, one for the pornography having been shown to the boy on Tuesday, one for pornography having been shown to him on Wednesday two months later and one for him having watched live sex acts three months after that. I see it as molestation."

The motion justice also construed the complaint as alleging that Abbott's sexual molestation of Jimmy and the alleged harm caused by Porto were inextricably linked. She stated that "this harm is clearly arising from this sexual conduct and seduction that was laid upon [Jimmy] by [Abbott]." As a result of these observations, she granted summary judgment in favor of ACIC, ruling that Porto's insurance policy excluded Jimmy's injuries from coverage and, therefore, that ACIC had no duty to defend Porto in the family action.

> members such as Abbott from engaging in the aforementioned activities.
>
> \* \* \* \* \* \*
>
> "36. Porto knew, or should have known, that Defendants' organization attracted adult individuals, including Abbott, with a propensity for engaging in inappropriate sexual conduct and acts with its boy scout members, and as such, owed Plaintiffs a duty to implement education, training and guidelines to prevent such activity, to warn Plaintiffs of such activity, to train and prepare Plaintiffs to avoid situations involving such activity, to prepare, educate and train its troop members, including [Jimmy], to avoid such activity, to educate, train and prepare Plaintiffs that such situations could

## Analysis

■■■■■■ As we previously have noted, "[a]n exclusion from coverage in a homeowner's insurance policy must be clear and unambiguous." *Campbell v. Norfolk & Dedham Mutual Fire Insurance Co.*, 682 A.2d 933, 935 (R.I.1996). This Court will not deviate from a policy's literal language unless we conclude it is ambiguous. *Sjogren v. Metropolitan Property and Casualty Insurance Co.*, 703 A.2d 608, 610 (R.I. 1997). In assessing the clarity of the relevant policy language, we view the policy in its entirety, affording its terms their "plain, ordinary and usual meaning." *Amica Mutual Insurance Co. v. Streicker*, 583 A.2d 550, 552 (R.I.1990) (quoting *Sentry Insurance Co. v. Grenga*, 556 A.2d 998, 999 (R.I.1989)). We look not at what the insurer may have intended the policy to cover or exclude, but rather what an ordinary reader of the policy would have understood the policy's terms to mean if he or she had read them. *Pressman v. Aetna Casualty and Surety Co.*, 574 A.2d 757, 760 (R.I.1990) (citing *Elliott Leases Cars, Inc. v. Quigley*, 118 R.I. 321, 326, 373 A.2d 810, 812 (1977)). "If the terms of an insurance contract are subject to more than one reasonable interpretation, the policy will be construed in favor of the insured to avoid forfeiture." *Campbell*, 682 A.2d at

> arise and to prepare, educate and train its troop members, including [Jimmy], to properly cope with such activity.
>
> \* \* \* \* \* \*
>
> "40. As a direct and proximate result of the negligence, including, but not limited to the acts and/or omissions of the Defendants and/or Defendants' employees and/or agents, Plaintiffs sustained severe physical, mental and emotional injury, emotional trauma, permanent psychological injury, great pain of body, mental anguish, impairment of their lifestyle, lost earning capacity, other economic harm, and have incurred great expenses for medical care and treatment and have suffered other harm."

935 (citing *Mallane v. Holyoke Mutual Insurance Co.*, 658 A.2d 18, 20 (R.I.1995)). On the other hand, we will not engage in mental or verbal gymnastics to hurdle over the plain meaning of the policy's language. *Mallane*, 658 A.2d at 20.

### The Term "Arising Out Of"

On appeal, Porto and the BSA focus their arguments on the motion justice's interpretation of the term "arising out of" as it is used in the homeowners' policy. "Arising out of" is not defined in the policy. They contend that this term is ambiguous, and, because it is a term limiting the scope of insurance coverage, they suggest it must be construed by the court in favor of coverage. *Campbell*, 682 A.2d at 935. Porto and BSA argue that the motion justice erroneously concluded that the complaint alleged that Jimmy's injuries all arose from Abbott's acts of sexual molestation. Specifically, they argue that negligent supervision and failure to educate are distinct claims within the family's complaint—both of which are alleged as proximate causes of Jimmy's injuries—wholly apart from the charges of sexual assault asserted against Abbott. They contend that these separate claims against Porto for negligence cannot be construed as "arising from" Abbott's intentional acts of sexual molestation. In addition, Porto and BSA suggest, the family's complaint contains separate allegations that Abbott subjected Jimmy to viewing pornography and to observing live sexual acts—occurrences that, according to defendants, fall outside the purview of the policy's sexual-molestation exclusion because they do not involve any physical contact between Jimmy and his abuser. Porto and BSA argue on appeal that the negligence claims against Porto concerning these acts are not subject to the policy's definitional exclusion because they cannot be construed as "arising from" physical sexual molestation.

Porto and BSA insist that the ambiguous term "arising out of" should be narrowly construed in interpreting an insurance policy exclusion, referencing our previous holding in *Hingham Mutual Fire Insurance Co. v. Heroux*, 549 A.2d 265, 267 (R.I.1988) (examining similar policy exclusions in cases from other jurisdictions containing the language "arising out of" and concluding that the term should be construed to mean injuries having "a causal connection [with]" the excluded item or thing). In support of their argument, Porto and BSA rely primarily on *St. Paul Fire & Marine Insurance Co. v. Schrum*, 149 F.3d 878, 881 (8th Cir.1998) (holding that molestation by a third party is "merely incidental" to a separate negligent supervision claim against the insured, and that the negligent-supervision claim gave rise to " 'separate and non-excluded causes of [the children's] injuries, apart from the [accompanying sexual act]' "). They also cite cases in support of their contention that negligent-supervision claims should not be excluded from coverage under a homeowner's insurance policy when they are alleged as a separate proximate cause of the victim's injuries, even when another person's intentional sexual misconduct also allegedly caused those injuries. *See Horace Mann Insurance Co. v. Barbara B.*, 4 Cal.4th 1076, 17 Cal.Rptr.2d 210, 846 P.2d 792, 798 (Cal.1993) (*en banc*) (holding that potential liability for the insured's nonsexual negligent conduct was severable from potential liability for the insured's alleged sexual acts, giving rise to a duty to defend); *Doe v. Shaffer*, 90 Ohio St.3d 388, 738 N.E.2d 1243, 1248–49 (Ohio 2000) (holding that providing liability insurance coverage to a diocese and bishop for their negligence relating to alleged sexual abuse committed by others would not violate public policy).

ACIC counters that the term "arising out of" is not ambiguous. It suggests that the phrase is generally understood as meaning "originating out of", "flowing from" or "based on." In support of this interpretation, ACIC references case law construing the term "aris[ing] out of" broadly to bar coverage in similar situations, citing at oral argument a recently published order from this Court, *Howard v. Guidant Mutual Insurance Group,* 785 A.2d 561, 562–63 (R.I.2001) (mem.), as well as numerous cases from other jurisdictions.[4] Further, ACIC argues that the concept of causation in insurance law is different from the tort concept of proximate cause, suggesting that the focus of this Court's analysis in determining the scope of coverage should be on the injuries suffered rather than on the theories of

recovery plead in the family's complaint. ACIC contends that "the issue [in determining the scope of coverage and an insurer's duty to defend] is not the negligence of Porto and what form it took, the issue is what are the plaintiff's damages and from what do they arise." ACIC asserts that all the family's damages arose out of Abbott's acts of actual, alleged, or threatened sexual molestation; as a result, it maintains, they are excluded from coverage under Porto's insurance policy.

The phrase "arising out of" within policy language is generally considered to mean "flowing from" or "having its origin in," thereby *"indicating that there only need be 'a' causal connection,* rather than a proximate causal connection." 7 *Couch on Insurance* 3d § 101:54 at 101–147–48 (1997).[5] (Emphasis added.) As

---

4. *See Winnacunnet Cooperative School District v. National Union Fire Ins. Co.,* 84 F.3d 32, 35, 37–38 (1st Cir.1996) (construing the term "arising out of" as a " 'very broad, general and comprehensive term * * * meaning originating from or growing out of or flowing from,' " and holding a policy exclusion applicable when proving the excluded injury was an essential element of the negligence claim); *All American Insurance Co. v. Burns,* 971 F.2d 438, 442 (10th Cir.1992) (holding that additional negligence-based allegations in a complaint did not warrant coverage when the injuries alleged all stemmed from acts of sexual molestation); *see also American Empire Surplus Lines Insurance Co. v. Bay Area Cab Lease, Inc.,* 756 F.Supp. 1287 (N.D.Cal.1991) *Terra Nova Insurance Co. v. North Carolina Ted., Inc.,* 715 F.Supp. 688 (E.D.Pa.1989); *Britamco Underwriter's, Inc. v. Zuma Corp.,* 576 So.2d 965 (Fla.Dist.Ct.App.1991); *Wallace v. Huber,* 597 So.2d 1247 (La.Ct.App. 1992); *Cortinez v. Handford,* 490 So.2d 626 (La.Ct.App.1986); *Gaspard v. Jefferson Insurance Co.,* 488 So.2d 350 (La.Ct.App.1986); *Taylor v. Duplechain,* 469 So.2d 472 (La.Ct. App.1985); *Kiefer v. Whittaker,* 468 So.2d 587 (La.Ct.App.1985); *United National Insurance Co. v. Parish,* 48 Mass.App.Ct. 67, 717 N.E.2d 1016 (Mass.App.Ct.1999); *Illinois Employers Insurance of Wausau v. Dragovich,* 139 Mich. App. 502, 362 N.W.2d 767 (Mich.Ct.App.

1984); *Roloff v. Taste of Minnesota,* 488 N.W.2d 325 (Minn.Ct.App.1992); *Ross v. City of Minneapolis,* 408 N.W.2d 910 (Minn.Ct. App.1987); *Garrison v. Fielding Reinsurance, Inc.,* 765 S.W.2d 536 (Tex.Ct.App.1989); *Tarrant County Ice Sports, Inc. v. Equitable General Life Insurance Co. of Oklahoma,* 662 S.W.2d 129 (Tex.Ct.App.1983); *Bankert by Habush v. Threshermen's Mutual Ins. Co.,* 110 Wis.2d 469, 329 N.W.2d 150 (Wis.1983).

5. Although at least one court has interpreted an exclusion phrased in terms of "arising out of" as requiring a showing of proximate cause, *see 7 Couch on Insurance* 3d § 101:54 at 101–148 n. 37 (1997) (citing *State Capital Insurance Co. v. Nationwide Mutual Insurance Co.,* 78 N.C.App. 542, 337 S.E.2d 866 (N.C.Ct. App.1985)), most courts that have considered this issue do not follow this interpretation. *See Bagley v. Monticello Insurance Co.,* 430 Mass. 454, 720 N.E.2d 813, 816 (Mass.1999) (holding that the phrase "arising out of," as used in exclusionary clauses of insurance policies, "must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause"); *see also Owens v. Prudential Property and Casualty Insurance Co. of New Jersey,* 336 N.J.Super. 79, 763 A.2d 792 (N.J.Super.Ct.App.Div.2000); *Mount Vernon Fire Insurance Co. v. Creative Housing, Ltd.,* 88 N.Y.2d 347, 645 N.Y.S.2d 433, 668 N.E.2d 404 (N.Y.1996).

previously noted, this Court has considered the term "arising out of" in an insurance policy's exclusory provisions only twice previously, once in the context of an uninsured-premises exclusion, *see Hingham Mutual Insurance Co.*, 549 A.2d at 266, and again recently in the context of a sexual-misconduct exclusion, *see Howard*, 785 A.2d at 562–63. In both these cases, this Court declined to read the term "arising out of" as ambiguous. *Howard*, 785 A.2d at 563; *Hingham Mutual Fire Insurance Co.*, 549 A.2d at 266–67. In the absence of an ambiguity, we afford the term its plain, ordinary, and literal meaning, enforcing what we deem to be the objective manifestation of the parties' expectations. *See Amica Mutual Insurance Co.*, 583 A.2d at 551–52. In *Hingham*, we examined the reasoning of other courts and concluded that the term "arising out of"—in the context of an uninsured-premises exclusion—should be construed narrowly "as intending to limit the scope of coverage to incidents with a causal connection to the [uninsured] premises, not to incidents that merely occur on the [uninsured] premises." *Hingham Mutual Fire Insurance Co.*, 549 A.2d at 267 (citing *Hanson v. General Accident Fire & Life Insurance Corp.*, 450 So.2d 1260, 1261–62 (Fla.Dist.Ct.App.1984)). *Accord* 7 *Couch on Insurance* 3d at § 101:54 ("arising out of" means only that "a causal connection" exists between the alleged injuries and the excluded subject matter). Applying our interpretation of the term "arising out of" in *Hingham* and *Howard* to the definition of "bodily injury" in this policy, we conclude that it excludes coverage for bodily injury claims having a causal connection with "the actual, alleged or threatened sexual molestation of a person."

■ When applying this definition to the facts of this case, it is useful, however, to underscore the distinction between the meaning of proximate cause in insurance-coverage cases as opposed to its meaning in tort cases. This distinction has been recognized both by courts and by commentators who have considered the issue.[6] The traditional tort concept of proximate cause focuses on legal culpability for the accident, and whether the conduct of the alleged tortfeasor in any way produced plaintiff's injuries. "Proximate cause [in tort cases] is established by showing that but for the negligence of the tortfeasor, injury to the plaintiff would not have occurred." *English v. Green*, 787 A.2d 1146, 1151 (R.I.2001) (quoting *Skaling v. Aetna Insurance Co.*, 742 A.2d 282, 288 (R.I. 1999)). This concept of proximate cause, however, is different from the causation question in insurance-coverage disputes:

"In insurance cases, the concern is ordinarily not with the question of 'culpability' or why the injury occurred, but only with the nature of the injury and how it physically happened, which must then be compared with the language of the insurance policy to determine whether this type of injury from this type of physical cause was intended to be covered by the policy. * * * In essence, when a claim for damages is grounded on an insurance contract, the liability of the insurer depends upon whether the damages sustained were a result of a risk or hazard against which the insured was covered by the policy." 7 *Couch on Insurance* 3d § 101:41 at 101–131–32.

■ Thus, it is not the proximate cause of the injuries suffered that deter-

---

**6.** *See, e.g., Mount Vernon Fire Insurance Co. v. Creative Housing Ltd.*, 93 F.3d 63, 66 (2nd Cir.1996); *Bagley*, 720 N.E.2d at 816; *Owens*, 763 A.2d at 794; *Mount Vernon Fire Insurance Co.*, 645 N.Y.S.2d 433, 668 N.E.2d at 405; 7A *Appleman, Insurance Law and Practice*, § 4500 (1979); 7 *Couch on Insurance* 3d at § 101:41.

mines the insured's right to coverage under the policy—rather, it is the nature of the bodily injuries suffered by plaintiff and how the alleged tortfeasor(s) supposedly inflicted these injuries. If the type of injuries suffered are excluded from coverage under the language of the policy, no right to coverage or duty to defend the insured exists—even if, as here, the insured's conduct is an alleged proximate cause of the injuries in question. As the New York Court of Appeals has stated:

> "While the insured's negligence may have been a proximate cause of plaintiff's injuries, that only resolves its liability; it does not resolve the insured's right to coverage based on the language of the contract between him and the insurer. Merely because the insured might be found liable under some theory of negligence does not overcome the policy's exclusion for injury resulting from [the excluded conduct]." *Mount Vernon Fire Insurance Co. v. Creative Housing Ltd.*, 88 N.Y.2d 347, 645 N.Y.S.2d 433, 668 N.E.2d 404, 406 (N.Y.1996) (holding that an insurance company had no duty to defend a separate negligence claim against the insured when the injuries alleged resulted from a third party's assault on the plaintiff).

In sum, for insurance-coverage purposes, if the alleged sexual molestation is a cause of the claimed bodily injuries, then the existence of other alleged negligence claims and proximate causes is of no moment—the bodily injuries alleged are causally connected to or "arise out of" the sexual molestation, and are thereby excluded from coverage.

■ Here, Porto and BSA rely on the *Schrum* and *Horace Mann Insurance Co.* cases for the proposition that the family's negligence claims against Porto should be viewed as separate, severable claims, irrespective of the allegations concerning Abbott's intentional misconduct. *See Schrum*, 149 F.3d at 881; *Horace Mann Insurance Co.*, 17 Cal.Rptr.2d 210, 846 P.2d at 798. We agree that the family's various theories of recovery are separate causes of action and could provide discrete grounds for finding liability against the various defendants. As the above analysis shows, however, the relevant inquiry for determining potential coverage under an insurance policy of this type is not the theories of relief in the complaint, but whether the injuries alleged by plaintiff have a causal connection with whatever type of conduct or situation that the policy has excluded from coverage. In both *Schrum* and *Horace Mann Insurance Co.* the underlying complaint alleged not only multiple theories of recovery, but also separate, discrete injuries allegedly attributable to the different causes of action. *Schrum*, 149 F.3d at 880–81; *Horace Mann Insurance Co.*, 17 Cal.Rptr.2d 210, 846 P.2d at 798; *see also Allstate Insurance Co. v. Bates*, 185 F.Supp.2d 607, 612–13 (E.D.N.C.2000) (discussing the separate injuries relating to the different theories of recovery alleged in *Schrum*, and rejecting its holding when no independent injuries are alleged); *Waller v. Truck Insurance Exchange, Inc.*, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619, 634 (Cal.1995) (discussing the separate facts alleged giving rise to independent injuries in the *Horace Mann Insurance Co.* complaint, and distinguishing the case as inapplicable to additional tort theories of recovery when "noncovered acts * * * comprised the entire complaint").

■ Here, the family's complaint alleged no separate, independently caused bodily injuries to Jimmy resulting solely from Porto's negligence. Rather, the complaint alleged injuries resulting from Abbott's alleged sexual assault on Jimmy, which included, among other things, expo-

sure to pornography and live sexual acts. The complaint then alleged that Porto's negligence was a contributing or additional proximate cause of these injuries. But while the averred cause of the family's injuries is different, the alleged bodily injuries to Jimmy and his parents are the same. Under the language of the insurance policy, ACIC is not bound to indemnify or defend claims for bodily injuries "arising out of" the "actual, alleged or threatened sexual molestation of a person." As the Minnesota Supreme Court has observed, considering a similar policy exclusion, "[t]he plain language of the polic[y] provides no coverage for injury in the form of sexual molestation, regardless of whether the injury was caused by an insured or the injury could have been prevented by an insured." *Metropolitan Property and Casualty Insurance Co. v. Miller*, 589 N.W.2d 297, 300 (Minn.1999).

Interpreting "arising out of" as we did in *Hingham* to mean having "a causal connection to" the excluded matter, we conclude that all the injuries alleged in the family's complaint have a causal connection with, and thus arise out of, Abbott's alleged acts of "fondling," "engaging in oral sexual activity," and "exposing [Jimmy] to pornography and live sexual acts."

**Exclusion for "Sexual Molestation"**

█ In light of this conclusion, we are also faced with the interpretation of another undefined term in ACIC's insurance policy in determining the insurer's duty to

defend: namely, "sexual molestation." According to the definition of "bodily injury" as recited above, ACIC's policy does not provide coverage for bodily injuries arising out of "actual, alleged or threatened sexual molestation of a person." Porto and BSA argue that the term "sexual molestation" can be applied only to activities involving physical contact with the victim. Thus, they assert, the family's allegations about Jimmy's alleged visual exposure to pornography and to live sexual acts cannot be included within the definition of "sexual molestation" as that term is used in Porto's policy.[7] ACIC counters that the term "sexual molestation" does not presuppose physical contact. Rather, it asserts that the plain meaning of the phrase "sexual molestation" includes those nonphysical activities listed in the family's complaint that allegedly also caused the bodily injuries in question.

Porto and BSA maintain that "[c]ourts have consistently found that conduct constitutes sexual 'abuse' or 'molestation' only where there has been physical sexual contact," citing *McAuliffe v. Northern Insurance Co. of New York*, 69 F.3d 277, 279 (8th Cir.1995); *Community Action for Greater Middlesex County, Inc. v. American Alliance Insurance Co.*, 254 Conn. 387, 757 A.2d 1074, 1083 (Conn.2000) (*Community Action*); *Jones v. Doe*, 673 So.2d 1163, 1164–65 (La.Ct.App.1996); *New World Frontier, Inc. v. Mount Vernon Fire Insurance Co.*, 253 A.D.2d 455,

**7.** Porto and BSA suggest that ACIC did not dispute their characterization of the term "sexual molestation" before the Superior Court. As a result, they argue, ACIC has conceded that the term is limited to actual physical contact with the victim. ACIC, however, does not agree. On the contrary, it has included an argument concerning the definition of "sexual molestation" in its brief on appeal. As ACIC points out, the motion justice addressed this issue at the summary judg-

ment hearing and determined that all the allegations listed in paragraph fifteen of the family's complaint fell within the ambit of "sexual molestation," stating "[t]he exposure to the pornography and the live sexual acts * * * was all part of the same overall molestation. It's the same course of action. It's the same seduction." Thus, this issue was raised and addressed below, and it is properly preserved for our review on appeal.

676 N.Y.S.2d 648, 649 (N.Y.App.Div.1998). A reading of these cases, however, reveals that none of them actually *limits* the term "sexual molestation" to unwanted physical contact, as Porto and BSA suggest. In fact, the Connecticut Supreme Court in *Community Action* specifically acknowledged the broad nature of the term. *See Community Action*, 757 A.2d at 1082 (holding that the phrase " 'actual or threatened abuse or molestation by anyone of any person' " is "broad language" that may include many things within its purview, including, *but not limited to* "unwanted contact of a sexual nature").[8]

After surveying the above-cited case law construing this term, we conclude that neither these courts nor any others have accepted the constricted definition of "sexual molestation" that Porto and BSA have urged us to adopt. Rather, the courts that have considered this issue have acknowledged the broad nature of the term "sexual molestation," noting how it embraces the multiple dictionary definitions for the words "molest" and "molestation." *See American National General Insurance Co. v. Jackson*, 203 F.Supp.2d 674, 678–79 (S.D.Miss.2001) (holding that the definition of "sexual molestation" includes, among other meanings "[t]o subject to unwanted or improper sexual activity," and applying the term to nonphysical occurrences, including verbal sexual harassment) (quoting American Heritage Dictionary 1133 (4th ed.2000)); *Community Action*, 757 A.2d at 1082 n. 15 (quoting from the multiple definitions of "molest" in Webster's Third New International Dictionary 1455 (1981)); *Newby v. Jefferson Parish School Board*,

738 So.2d 93, 97 (La.Ct.App. 5 Cir.1999) (rejecting the equation of "sexual molestation" with "sexual acts", and concluding that the term "molest" has multiple definitions) (quoting Webster's Third New International Dictionary at 1455); *Farmers Union Mutual Insurance v. Kienenberger*, 257 Mont. 107, 847 P.2d 1360, 1363 (Mont. 1993) (defining "sexual molestation", in part, as "an annoying sexual advance") (citing Webster's New Collegiate Dictionary 764 (1984)).

It is well settled that the tenets of contract law apply to the interpretation of insurance policies. *Mallane*, 658 A.2d at 20; *Aetna Casualty & Surety Co. v. Sullivan*, 633 A.2d 684, 686 (R.I.1993); *Malo v. Aetna Casualty and Surety Co.*, 459 A.2d 954, 956 (R.I.1983). According to these principles, a court should afford terms within an insurance policy their literal meaning, unless the language is ambiguous. *Amica Mutual Insurance Co.*, 583 A.2d at 551–52. The proper test for ambiguity focuses on determining what ordinary readers and purchasers of the insurance policy would have understood the policy to cover if they had read it. *Pressman*, 574 A.2d at 760 (citing *Elliott Leases Cars, Inc.*, 118 R.I. at 326, 373 A.2d at 812). This Court refrains from engaging in "mental gymnastics * * * to read ambiguity into a policy where none is present." *Sjogren*, 703 A.2d at 610 (quoting *Mallane*, 658 A.2d at 20).

As the Connecticut Supreme Court observed in *Community Action* after it reviewed the pertinent case law, insurance policy exclusions for sexual

---

**8.** Contrary to BSA's characterization of this case, the court in *Community Action* goes on to acknowledge that the terms "abuse" and "molest" cover a broad spectrum of activities, including "to meddle or interfere with unjustifiably[,] often as a result of abnormal sexual motivation." *Community Action for Greater Middlesex County, Inc. v. American Alliance Insurance Co.*, 254 Conn. 387, 757 A.2d 1074, 1082 n. 15 (Conn.2000) (quoting from the definition of "molest" as provided by Webster's Third New International Dictionary, 1455 (1981)).

abuse or molestation are not generally viewed as ambiguous. *Community Action,* 757 A.2d at 1083 (noting that the court in that case could uncover no precedent holding policy exclusions for "abuse and molestation" ambiguous). We agree and hold that the concept of "the actual, alleged, or threatened sexual molestation of a person" is not ambiguous as it was used in this policy; rather, it is a term that is commonly understood to describe a broad range of unwanted or inappropriate sexual activities, including subjecting another individual to indecent or nonconsensual advances for the perpetrator's own sexual gratification. Black's Law Dictionary 1021 (7th ed.1999) (defining "molestation," in part, as "[t]he act of making * * * indecent advances to or on someone, esp. for sexual gratification"). Such advances may or may not involve actual physical contact with the victim. Moreover, the plain meaning of the term "threatened sexual molestation" is not limited to situations involving unwanted sexual contact of a physical nature, but it also extends to other inappropriate conduct of a sexual nature that merely threatens an actual sexual assault—such as verbal advances or displaying sexually explicit images or suggestive pictures to the victim. Such acts are not only typically pursued for the actor's own sexual stimulation or gratification, but also they may threaten to and sometimes lead to an actual sexual assault upon the victim.

In sum, the family's complaint alleged that Jimmy suffered bodily injuries when he was sexually assaulted by Abbott, and that Porto's negligence caused these injuries. The complaint described in one sentence the nature of the alleged sexual assaults, including within this description exposure to pornography and to live sexual acts, as well as physical assaults of a sexual nature. Porto's ACIC insurance policy provided coverage for bodily injuries caused by Porto's negligence—but only if these injuries did not arise out of actual, alleged, or threatened sexual molestation. Here, the policy clearly stated that ACIC did not afford coverage for bodily injuries arising out of "the actual, alleged or threatened sexual molestation of a person." Thus, ACIC's duty to defend Porto turns on whether the family's complaint alleged bodily injuries arising from acts that did not constitute actual, alleged, or threatened sexual molestation. Most importantly, the family has not alleged that Porto's negligence proximately caused any bodily injuries that did not arise out of the sexual-molestation claim; rather, the complaint avers that Abbott's alleged criminal acts of sexual molestation upon Jimmy were responsible for causing this harm. And even though Abbott's conduct in allegedly exposing Jimmy to pornography and to live sex acts may not have involved physical contact with him, these activities still constituted unwanted sexual advances upon Jimmy for Abbott's own sexual gratification. Further, the complaint described these activities as a part of Abbott's alleged sexual assault, averring that "Abbott sexually assaulted [Jimmy] by fondling him, engaging in oral sexual activity, and *exposing [Jimmy] to pornography and live sexual acts.*" (Emphasis added.)

Given these allegations, we agree with the motion justice that this averment described multiple manifestations of alleged sexual assaults committed by Abbott against Jimmy, rather than stating independent causes of action for each different type of alleged sexual misconduct. Further, we hold that each of these alleged sexual activities, whether considered singly or in the aggregate, comes within the purview of what is commonly understood to constitute actual, alleged, or threatened sexual molestation under the "plain, ordinary and usual meaning" of that term.

*Amica Mutual Insurance Co.*, 583 A.2d at 552 (quoting *Sentry Insurance Co. v. Grenga*, 556 A.2d 998, 999 (R.I.1989)). This remains true even when we employ a narrow interpretation of the term "arising under." [9] Because the family's complaint alleged only different kinds of sexual molestation as proximate causes of Jimmy's injuries, the exclusion applies to bar coverage.

## Public Policy

 Finally, we address the family's argument that public policy favors requiring the insurer to provide coverage for Porto in this case. The family argues that the sexual-molestation exclusion in this policy should be deemed to be inapplicable, so that the policy will provide coverage for claims against negligent supervisors of sexual molesters. The family points out that this case concerns the alleged negligence of Porto rather than the intentional acts of Abbott. Therefore, they suggest, ACIC should not be allowed to escape its duty to defend its own negligent insured, Porto, simply because the injuries to Jimmy allegedly flowed from Abbott's intentional and criminal acts of sexually molesting him. The family contends that the sexual-molestation exclusion in the ACIC policy should not apply to any of the discrete injuries Jimmy suffered that were caused by Porto's alleged negligent supervision of Abbott. In support of this proposition, they rely primarily on *Schrum*, 149

F.3d at 880–81 (holding that sexual molestation by a third party was incidental to a separate negligent-supervision claim against the insured). The family also argues that allowing insurance coverage for a non-molester's acts of negligent supervision does not violate public policy, because such coverage is for the insured's negligence rather than for his or her intentional act of sexual molestation. *See Peerless Insurance Co.*, 667 A.2d at 789 (adopting the inferred intent standard, which relieves insurers of their duty to defend and indemnify an insured in cases involving the *insured's* alleged sexual molestation of a minor); *Shaffer*, 738 N.E.2d at 1248.

ACIC counters these arguments by pointing out that the parties to this insurance policy specifically contracted to provide no coverage for bodily injuries arising out of "actual, alleged or threatened sexual molestation." ACIC argues that injuries arising from sexual molestation are not risks contemplated by the parties, and that any action by this Court to expand policies of this kind to cover injuries arising from sexual molestation would alter the risk of these contracts and inflate insurance premiums. *See Allen v. Automobile Insurance Co. of Hartford Connecticut*, 892 S.W.2d 198, 201 (Tex.Ct.App.1994). Further, ACIC points out, the holding in *Schrum* has been criticized and rejected by other jurisdictions for focusing on the

---

9. According to Porto and BSA, a narrow interpretation of the term "arising out of" would be to equate these words as meaning "caused by." *But see Hingham Mutual Fire Insurance Co. v. Heroux*, 549 A.2d 265, 267 (R.I.1988) (equating "arising out of" as having "a causal connection" with). Even if we were to read the policy as excluding only those bodily injuries that were caused by sexual molestation, we would still conclude that the term "sexual molestation" encompassed all the sexual misconduct alleged in the family's complaint, including those incidents that

did not involve any sexual contact with or touching of the victim. And even though the complaint can be construed to allege that Porto's negligence proximately caused Jimmy's bodily injuries, they still arose out of the alleged molestation within the meaning of that exclusion in the policy. The alleged existence of multiple proximate causes for the bodily injuries in question does not negate the allegation that sexual molestation was one of them. This is all that the policy required for the exclusion to apply.

claims alleged rather than on the nature of the plaintiff's injuries. *Bates*, 185 F.Supp.2d at 613 (rejecting *Schrum* and holding that it is not the nature of the claims set forth in the complaint, but rather the nature of the injuries alleged that determines the extent of coverage). Finally, ACIC posits that the alleged victim in this case, Jimmy, would not be deprived of an insured "deep pocket" if the sexual-molestation exclusion applies to the claims against Porto, because BSA has its own policy providing it with an extensive amount of coverage.

An insurer is free to structure the coverage as broadly or as narrowly as the policy provides, so long as the coverage (or lack thereof) is not illusory and does not violate public policy. *See, e.g., Pressman*, 574 A.2d at 760. Here, the policy's coverage excluded claims for bodily injuries arising from incidents of actual, alleged, or threatened sexual molestation. As the Ohio Supreme Court stated in *Shaffer*, such exclusionary language is usually considered consistent with public policy, because "[s]ociety does not want to encourage or indemnify the wrongful conduct of the molester * * *." *Shaffer*, 738 N.E.2d at 1248. The family, Porto, and BSA argue that the public policy favoring such an exclusion for intentional acts of child molestation does not apply to claims of negligent supervision, especially as applied to youth-activity volunteers like Porto who generously contribute their time and experience to socially beneficial activities such as scouting. Nevertheless, insurers violate no established public policy when they exclude coverage for bodily injury claims against alleged negligent supervisors of child molesters. By urging this Court to rule that the exclusionary language in the policy does not bar coverage for claims based on negligent supervision, defendants essentially ask us to focus solely on the causes of action contained in the underlying complaint rather than on the alleged conduct that caused the victim's bodily injuries. But given the policy's "arising out of" language, such an analysis, we conclude, would be inappropriate. Rather, according to the policy, coverage turns on whether sexual molestation—actual, alleged, or threatened—is an alleged cause of the bodily injuries. *See Bates*, 185 F.Supp.2d at 613 (citing *Northwest G.F. Mutual Insurance Co. v. Norgard*, 518 N.W.2d 179, 184 (N.D.1994)); *Mount Vernon Fire Insurance Co.*, 645 N.Y.S.2d 433, 668 N.E.2d at 406. If it is so alleged, then the policy does not cover such claims and the insurer has no duty to provide its insured with a defense against them.

## Conclusion

In this case, the alleged bodily injuries all arose from acts of sexual molestation purportedly perpetrated by Abbott upon Jimmy. Even if Porto's alleged negligence may have been a contributing factor or a proximate cause of these injuries, it does not negate the alleged causal connection between Abbott's acts of sexual molestation and Jimmy's injuries. But for the allegations of injuries to Jimmy arising from Abbott's sexual assault, Porto's alleged negligence would not have caused Jimmy any bodily injury damages whatsoever and the family would have no claims for loss of consortium. Further, unlike the *Schrum* case on which BSA and Porto rely, there are no discrete injuries alleged in the family's complaint that arose solely out of Porto's alleged negligence. *Schrum*, 149 F.3d at 881 (holding that the complaint there alleged separate and unexcluded causes of the children's injuries, apart from the other individual's accompanying act of molestation). Therefore, regardless of the theories of recovery that the family has asserted against BSA and

Porto, the policy's exclusionary language bars coverage for these claims.

For these reasons, we deny the appeal and affirm the Superior Court's judgment that the plaintiff ACIC does not have a duty to defend or to indemnify the defendant, Sebastian M. Porto, in the action filed against him by the family.