# DECISIONS

OF THE

## APPEALS COURT

OF

## MASSACHUSETTS

HINGHAM MUTUAL FIRE INSURANCE COMPANY *vs.* ELLEN SMITH[1,2] & others.[3]

No. 05-P-1769.

Middlesex. September 21, 2006. - May 10, 2007.

Present: GELINAS, BROWN, & VUONO, JJ.

*Insurance,* Homeowner's insurance, Liability insurance, Defense of proceedings against insured.

The judge in a civil action properly granted summary judgment declaring that the plaintiff insurer had no duty to defend or indemnify the defendant insureds under the homeowner's insurance policy the plaintiff had issued to them, where there was no coverage under the personal liability section of the homeowner's policy because the injuries alleged in the underlying action against the defendant insureds arose out of the actual, alleged, or

---

[1]We use pseudonyms for all of the individual parties.

[2]Individually and as parent and next friend of Ann Smith and Michael Smith.

[3]John Smith, individually and as parent and next friend of Ann Smith and Michael Smith; Karen Allen and Frank Allen, individually and as parents and next friends of Thomas Allen; and Thomas Allen.

threatened sexual molestation of a person and, thus, did not constitute "bodily injury" as defined by the policy [3-5], and both the underlying loss of consortium [5] and negligent supervision [6] claims were derived from that alleged conduct; where the plaintiff had no duty to defend, under the policy's personal injury endorsement, the underlying claim for intentional infliction of emotional distress, because the allegations in the underlying action that amounted to misrepresentation were not exclusive of the alleged sexual molestation [6-7]; and where the severability clause of the policy's personal umbrella liability endorsement did not require that each insured be treated as having separate coverage and, in any event, did not affect the applicability of the exclusion for bodily injuries arising from sexual molestation [7-8].

CIVIL ACTION commenced in the Superior Court Department on February 14, 2005.

The case was heard by *Wendie I. Gershengorn*, J., on a motion for summary judgment.

*David J. Hart* for Karen Allen & another.

*Ethan Warren* for the plaintiff.

VUONO, J. Hingham Mutual Fire Insurance Company (Hingham) sought a judgment in the Superior Court declaring that it did not have a duty to defend or indemnify Karen and Frank Allen, or their minor son, Thomas (the Allens), in an action brought against them by Ellen and John Smith on behalf of themselves and their minor children, Ann and Michael (the Smiths), for damages sustained as a result of alleged sexual abuse of Ann and Michael by Thomas. Karen and Frank Allen appeal[4] from a summary judgment generally declaring that Hingham had no duty to defend or indemnify them under any provision in the homeowner's insurance policy issued to them by Hingham — neither the provision for basic liability coverage, nor any applicable endorsements to the policy. We affirm.

*Background.* The factual and procedural background of the case may be summarized as follows. In 2003, the Smiths sued the Allens, alleging that Thomas sexually molested the Smith children on numerous occasions between May 27, 2000, and December 13, 2001. The underlying complaint contained four counts: count I, indecent assault and battery brought on behalf of Ann and Michael against Thomas only; count II, loss of

---

[4]The parties have stipulated to the dismissal of Thomas Allen's appeal.

consortium by Ellen and John Smith against Thomas and his parents; count III, intentional infliction of emotional distress brought on behalf of all plaintiffs against all defendants; and count IV, negligence brought on behalf of all plaintiffs against Karen and Frank Allen. The Allens were insured under a homeowner's policy issued by Hingham during the period that the Smiths claim the sexual molestation occurred. Hingham provided the Allens with a defense of the underlying suit pursuant to a reservation of rights, and brought this declaratory judgment action.[5]

On appeal, the Allens no longer contend that there is any coverage from any source for the indecent assault and battery claims asserted in count I or for any of the other counts to the extent that they seek damages from Thomas. See note 3, *supra*. What remains in dispute is whether there is coverage for the claims of loss of consortium, negligence, and intentional infliction of emotional distress that have been asserted by various Smith plaintiffs against Thomas's parents, Karen and Frank Allen, under (1) the basic homeowner's liability coverage contained in "Coverage L" of the homeowner's policy; (2) the endorsement that extends Coverage L to personal injury claims due to misrepresentation; or (3) the severability clause in the personal umbrella liability endorsement.

*Discussion.* 1. *Bodily injury exclusion.* We begin by considering the basic homeowner's liability coverage. The relevant policy provisions are as follows:

> "Coverage L — Personal Liability — We pay, up to our limit, all sums for which an insured is liable by law because of bodily injury or property damage caused by an occurrence to which this coverage applies. We will defend a suit seeking damages if the suit resulted from bodily injury or property damage not excluded under this coverage."

The definition section of the policy defines "bodily injury" as follows:

---

[5]While this appeal was pending, the underlying lawsuit was tried to a jury. In answer to special questions, the jury found for the Smiths on count I of their complaint, and for the Allens on the remaining counts.

"Bodily injury means bodily harm to a person and includes sickness, disease or death. This also includes required care and loss of services.

"Bodily injury does not mean bodily harm, sickness, disease or death that arises out of:

    a. a communicable disease; or

    b. the actual, alleged or threatened sexual molestation of a person."

The policy also defines "occurrence" as "an accident . . . includ[ing] loss from repeated exposure to similar conditions." In addition, the policy excludes coverage for "bodily injury or property damage which results directly or indirectly from: . . . an intentional act of an insured or an act done at the direction of an insured."

We agree with the motion judge that there is no coverage under the personal liability section (Coverage L) of the home-owner's policy if only because the injuries alleged by the Smiths "arise[] out of . . . the actual, alleged or threatened sexual molestation of a person" and thus do not constitute "bodily injur[ies]" as defined by the policy.

Even when used in exclusionary language, the term "arising out of" has been given a broad construction by our cases. "The phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law. . . . Indeed, cases interpreting the phrase 'arising out of' in insurance exclusionary provisions suggest a causation more analogous to 'but for' causation, in which the court examining the exclusion inquires whether there would have been personal injuries, and a basis for the plaintiff's suit, in the absence of the objectionable underlying conduct." *Bagley* v. *Monticello Ins. Co.*, 430 Mass. 454, 457 (1999). See *id.* at 455 (insurance policy's illegal acts exclusion barred coverage for judgment awarded in negligence action for injuries resulting from brutal rape). See also *New England Mut. Life Ins. Co.* v. *Liberty Mut. Ins. Co.*, 40 Mass. App. Ct. 722, 723, 727 (1996) (policy exclusion for personal injury claims "arising out of . . . discrimination which is unlawful" barred coverage for injuries

alleged in claims for negligence, misrepresentation, and loss of consortium arising out of underlying discriminatory acts); *Metropolitan Property & Cas. Ins. Co.* v. *Fitchburg Mut. Ins. Co.*, 58 Mass. App. Ct. 818, 820-821 (2003) (no duty to defend or indemnify insured under homeowner's policy where injuries allegedly inflicted by insured on coworker occurred at her place of employment and policy excluded coverage for losses arising out of or in connection with insured's business activities).

a. *Loss of consortium.* The Allens contend that the loss of consortium claims raised in the complaint are not excluded under the policy because bodily injury claims for "required care and loss of services" are treated differently than bodily injury claims from "sickness, disease or death." That claim fails for the same reasons.

As discussed in *New England Mut. Life Ins. Co.* v. *Liberty Mut. Ins. Co.*, 40 Mass. App. Ct. at 727, claims for loss of consortium that "arise out of" the underlying sexual molestation are "derived from the alleged [conduct] . . . . [W]e fail to see how they survive the exclusionary clause. It is the source from which the plaintiff[s'] personal injury originates rather than the specific theories of liability alleged . . . which determines the insurer's duty to defend." Any claims for loss of consortium are excluded from coverage under the basic personal liability policy.[6] See *American Commerce Ins. Co.* v. *Porto*, 811 A.2d 1185, 1199 (R.I. 2002) (construing identical policy exclusion for sexual molestation, and finding no coverage for negligent supervision and loss of consortium).

---

[6]Moreover, that the phrase "required care and loss of services" appears only in the definition section of the policy and is not repeated in the exclusionary clause immediately following the definition is of no import. It is well established that "[w]ords in exclusionary clauses of insurance contracts should be construed 'in their usual and ordinary sense.' " *Bagley* v. *Monticello Ins. Co.*, 430 Mass. at 457, quoting from *Liquor Liab. Joint Underwriting Assn. of Mass.* v. *Hermitage Ins. Co.*, 419 Mass. 316, 320 (1995). Here, the language relied upon by the Allens, when read in its "usual and ordinary sense," does not suggest that the exclusion applies only to those claims for bodily injury relating to "sickness, disease or death." To adopt the interpretation advocated by the Allens would distort the plain meaning of the clause and is contrary to what an "objectively reasonable insured, reading the relevant policy language, would expect to be covered." *New England Mut. Life Ins. Co.* v. *Liberty Mut. Ins. Co.*, 40 Mass. App. Ct. at 724, quoting from *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990).

b. *Negligent supervision.* The Allens' assertion that Hingham has a duty to defend them against the Smiths' negligent supervision claim is similarly unavailing. The Allens argue that negligent supervision is a separate claim that does not arise from Thomas's alleged sexual molestation but, rather, from their failure to properly supervise Thomas. However, the Smiths alleged no separate, independently caused bodily injuries causally related to the Allens' alleged negligent supervision. Rather, they alleged injuries resulting from a confluence of Thomas's alleged sexual assaults and the Allens' alleged misrepresentations regarding Thomas's "deviant sexual activity." The complaint then alleged that Karen and Frank's negligence was a contributing or additional proximate cause of these injuries. But while the alleged cause of the injuries is different, the bodily injuries allegedly suffered by the Smith children are the same. See *American Commerce Ins. Co.* v. *Porto,* 811 A.2d at 1199. Thus, the policy's exclusion for bodily injury "aris[ing] out of . . . sexual molestation" precludes coverage.

2. *Misrepresentation.* The Allens argue that Hingham has a duty to defend them against the Smiths' claim for intentional infliction of emotional distress because the policy's personal injury endorsement extends Coverage L to include coverage for "personal injury," defined as, inter alia, "damages for which an insured is legally liable caused by . . . misrepresentation."[7] The Allens assert that the Smiths' claim for intentional infliction of emotional distress is based on the allegations that the Allens lied when they represented that Thomas was in counselling and falsely assured the Smiths that the sexual molestation "would not take place again." The Allens claim that the Smiths' allegations of emotional distress derive from these representations, and assert that the representations allegedly made to the Smiths regarding Thomas's behavior and counselling fall squarely within this policy endorsement.

Although the insurance policy construed in *New England Mut. Life Ins. Co.* v. *Liberty Mut. Ins. Co., supra,* was not a homeown-

---

[7] We look to the facts alleged in the underlying complaint, not to theories of liability asserted by the Smiths, to determine whether Hingham has a duty to defend the Allens in the underlying action. See *Bagley* v. *Monticello Ins. Co.,* 430 Mass. at 458.

er's liability policy, the parties point to nothing to establish that the rule construing the policy language in that case is not equally applicable to the facts of this case.[8] Thus, the allegations in the Smiths' complaint that amount to misrepresentation are not exclusive of the alleged sexual molestation since without the alleged underlying sexual molestation, there would not have been any alleged personal injuries and no basis for the lawsuit. See *id.* at 727.

3. *Severability clause.* Finally, the policy's personal umbrella liability endorsement contains a severability clause, which provides, "The insurance provided by this endorsement applies separately to each 'insured' against whom a claim is made. But including more than one 'insured' will not increase our limit of liability." Relying on *Worcester Mut. Ins. Co.* v. *Marnell*, 398 Mass. 240 (1986), the Allens argue that the endorsement's severability clause requires that each insured be treated as having separate coverage, and therefore, coverage exists for the claims alleged against them, even though the claims against Thomas may be excluded.[9] In *Marnell*, the Supreme Judicial Court interpreted a similar severability clause in a homeowner's policy and determined that, notwithstanding the policy's exclusion for bodily injury arising out of the use of a motor vehicle operated by any insured, there was coverage under the policy for a negligent supervision claim brought against the insureds, who

---

[8]Even were we to further consider the Allens' argument here, it would fail under the facts of this case. The personal injury endorsement at issue also contains an exclusion that states in pertinent part:

"This insurance does not apply to personal injury: . . . caused by a publication or statement made by, at the direction of, or with the consent of an insured, if the insured knew or had reason to believe that the publication or statement was false."

The Allens contend that this exclusion must not be applied here. The crux of their argument is that the exclusion renders the personal injury coverage illusory and must be disregarded. We disagree. The endorsement, read in its usual and ordinary sense, would provide coverage for a misrepresentation where there is no intent to deceive and where the defendant has no reason to know that the statement made was false. The Smiths' allegations of misrepresentation raised in the underlying complaint fall into the category of statements that the Allens knew or had reason to believe were false.

[9]Although raised by the parties below, the motion judge did not address the issue of severability.

had supervised a party in which their son became intoxicated, subsequently causing the death of another while operating his motor vehicle. *Id.* at 241, 244. As we have previously explained, however, the result in *Marnell* turned on the allocation of risks between homeowner's coverage and automobile liability insurance. See *Phoenix Ins. Co.* v. *Churchwell*, 57 Mass. App. Ct. 612, 616 (2003). That is not the situation here. Thus, even considering Karen and Frank as separate insureds, the net result is the same.

Furthermore, the personal umbrella liability endorsement also states: "This insurance does not apply: . . . [t]o 'bodily injury' or 'personal injury' arising out of sexual molestation, corporal punishment or physical or mental abuse." Because the complaint in the underlying action alleges injuries due to sexual molestation, the exclusionary language in the definition of "bodily injur[ies]" precludes coverage for claims against any insured, even when considered separately, where the claims brought against them would have no basis but for the molestation. Thus, in this case, the personal umbrella liability endorsement's severability clause does not affect the applicability of the exclusion for bodily injuries arising from sexual molestation.

The other arguments raised by the Allens require no discussion. Suffice it to say that we have considered the Allens' remaining claims, and upon review find them to be without merit.

*Judgment affirmed.*