**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

No. 03-1151

TIG INSURANCE COMPANY,

Plaintiff-Appellee,

v.

WEMBLEY USA, INC., AND

BURRILLVILLE RACING ASSOCIATION, INC.,

Defendants-Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Boudin, Chief Judge,

Howard, Circuit Judge,

DiClerico,* District Judge.

Daniel V. McKinnon, with whom McKinnon & Harwood was on brief
for appellants.

Mark T. Reynolds, with whom Reynolds, DeMarco & Boland, Ltd.
was on brief for appellee.

September 19, 2003

---

*Of the District of New Hampshire, sitting by designation.

**Per Curiam**.    TIG Insurance Company brought suit seeking a declaratory judgment that the policy it issued to Wembley USA, Inc., with Burrillville Racing Association, Inc., as an additional insured, did not provide coverage for Burrillville's new building which was damaged by fire during construction.  TIG asserted that a clause in the policy, providing a time limit for coverage of new buildings during construction, barred coverage.  The district court accepted the magistrate judge's recommendation and summary judgment was granted in TIG's favor.   The defendants, Wembley and Burrillville, appeal that decision.  We affirm essentially for the reasons given by the magistrate judge in his report and recommendation dated August 13, 2002.

I.  Background

Burrillville operates Lincoln Park, which is located on Louisquisset Pike in Lincoln, Rhode Island, and offers greyhound racing along with other activities.  Wembley is the parent company of Burrillville.  The  Louisquisset Pike premises are listed in the schedule of locations in the declarations section of the TIG policy.

Burrillville began construction on a new paddock building at the Park in December of 2000.  Burrillville did not give TIG notice that the building was being constructed, although TIG issued an endorsement in December of 2000 in which the old paddock

building was deleted from coverage.  On March 13, 2001, a fire damaged the new paddock building while it was under construction.

The applicable policy is titled "K & K Sports, Leisure and Entertainment, Building and Personal Property Coverage," which is part of a larger package of commercial insurance Wembley purchased from TIG.  The policy period was for one year, from July 1, 2000, to July 1, 2001.  The policy covered certain premises listed in the common policy declarations with a limit of $155,188,494.00 for buildings under the "Blanket B" coverage. Wembley paid a premium of $205,075.00 for the commercial property part of the insurance package.  On December 6, 2000, TIG issued an endorsement that increased the maximum limit for one loss, lowered the "Blanket B" and "Blanket BPP" limits, and deleted the "old paddock building and contents."  As a result of those amendments, TIG returned $176.00 of the premium paid by Wembley.

Section A of the policy states:  "We will pay for direct physical loss to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss, except as otherwise excluded or limited."[1]  Section A.1 defines "Covered Property" to include "[n]ew buildings and structures while being built, and when completed, on the premises described in the Declarations."  § A.1.a.5.c.  Section A.2 which describes "Property

---

[1]There is no dispute that fire was a covered cause of loss within the meaning of the policy.

-3-

Not Covered" does not include new buildings under construction. Section A.5, "Newly Acquired Property Extension of Coverage," allows an insured to extend its coverage to new buildings while they are being built and also provides that TIG "will cover new Buildings being built at described premises for 60 days after construction begins, or when reported to us, or when the policy ends, whichever occurs first."[2]

TIG denied coverage for the fire-damaged building under section A.5 of the policy. It is undisputed that the damaged building was located on premises described in the policy declaration and that a listed limit of insurance is shown on the declarations page for buildings coverage. It is also undisputed that the damaged building had been under construction for more than sixty days at the time of the fire and that the construction had not been reported to TIG. The district court accepted the magistrate judge's recommendation and granted summary judgment in favor of TIG based on the sixty-day limit provided in section A.5.

---

[2]Section A.5 does not explain the process for extending coverage to new buildings while they are being built. At oral argument, counsel for TIG represented that if, after the insured notified TIG of a new building being built, TIG approved the extension of coverage, an additional premium would be assessed to cover the extension. Because Wembley and Burrillville did not notify TIG of the new building being built, the extension process is not at issue here. It is noteworthy, however, that contrary to the argument of defendants' counsel that the premium would not be reduced when buildings were deleted from coverage, it appears that TIG refunded part of the premium when the old paddock building was deleted from coverage in December of 2000.

II.   Discussion

Wembley and Burrillville challenge the district court's interpretation of the policy language.  The material facts are undisputed, as they were below.  The appeal presents a purely legal issue as to the meaning of the coverage section of the building policy, and therefore, the district court decision is subject to de novo review.  See Lexington Ins. Co. v. Gen. Accident Ins. Co., 338 F.3d 42, 46 (1st Cir. 2003).

Under Rhode Island law, disputed terms in an insurance policy are interpreted according to their plain and ordinary meaning to determine "what the ordinary reader and purchaser would understand them to mean."  Zarrella v. Minn. Mut. Life Ins. Co., 824 A.2d 1249, 1259 (R.I. 2003).  In assessing disputed language, the policy is considered in its entirety.  Am. Commerce Ins. v. Porto, 811 A.2d 1185, 1192 (R.I. 2002).  The literal language of the policy governs its meaning unless the disputed terms are ambiguous, in which case the policy is strictly construed against the insurer.  Pawtucket Mut. Ins. Co. v. Gay, 786 A.2d 383, 386 (R.I. 2001).

Wembley and Burrillville contend that the damaged building meets all of the requirements for coverage under section A.1.5 because it was a structure "while being built," which was located at a premises described in the policy declarations, with an applicable limit of insurance, and was not included in section A.2.

-5-

Based on those provisions, Wembley and Burrillville argue that the damaged building had "permanent" coverage under the policy and did not need the "temporary" coverage provided in section A.5. They also argue that section A.5 applies to "newly acquired property," but not to new buildings under construction. Alternatively, Wembley and Burrillville assert that the policy provisions are ambiguous and should be construed in their favor.

The interpretation urged by Wembley and Burrillville ignores the qualifying language in section A that coverage is provided as described "except as otherwise excluded or limited."[3] Taking the building policy coverage section as a whole, it provides coverage for "structures while being built," section A.1.a.5.c, for "sixty days after construction begins," section A.5.d.[4] As such, section A.5.d neither takes away what section A.1.a.5.c provides nor offers an alternative basis for coverage.[5] Instead, the plain meaning of section A.5.d, taken within the broader context of the

_____

[3]The defendants also argue that the high coverage limit coupled with the "blanket" coverage language in the declarations, would suggest to an ordinary insured that the policy would cover all buildings built on the listed premises. That interpretation, however, is directly contrary to the plain language of the policy and is therefore unreasonable.

[4]The additional limitations in section A.5.d are not pertinent to this case and therefore are not included in the analysis.

[5]Section A.2, "Property Not Covered," does not affect the interpretation of the disputed provisions because new buildings under construction are covered property, as provided in section A.1.a.5.c.

-6-

policy, limits the time that coverage is provided for new buildings while they are being built to a maximum of sixty days after the commencement of construction.

The heading of section A.5, "Newly Acquired Property Extension of Coverage," does not create confusion as to whether the time limit would apply to new buildings under construction. Immediately under that heading, the policy states that the coverage may be extended both to "new buildings while being built on the described premises" and "[b]uildings you acquire or lease at locations, other than the described premises, . . . ." Section A.5.d specifically states that "new buildings being built" are covered within the limits provided. It is clear from the language of section A.5 that it applies to both new buildings under construction at listed premises and buildings acquired by the insured at other premises.

Disputed insurance policy language is ambiguous "only when it is reasonably and clearly susceptible of more than one interpretation." Zarrella, 824 A.2d at 1259 (internal quotation marks omitted). The court "will not engage in mental or verbal gymnastics to hurdle over the plain meaning of the policy's language." Am. Commerce Ins. Co., 811 A.2d at 1193. Given the plain meaning of the time limitation in section A.5.d., the interpretation that the section offers only an alternative

-7-

temporary basis for coverage is not reasonable.  Therefore, no ambiguity exists in the disputed policy language.

III.  Conclusion

The plain meaning of section A.5.d. limits coverage for buildings under construction to a maximum of sixty days from the commencement of construction.  Because the damaged building had been under construction for more than sixty days at the time of the fire without notice to TIG, section A.5.d unambiguously precludes coverage.  Accordingly, the district court's decision granting summary judgment in favor of TIG is **<u>affirmed</u>**.