Peter J. SANGERMANO, Jr., et al.

v.

**ROGER WILLIAMS REALTY CORPORATION**

and

**Village At Elmhurst, LLC.**

No. 2010–71–APPEAL.

Supreme Court of Rhode Island.

June 9, 2011.

Christopher J. O'Connor.

John P. Walsh.

## ORDER

This case came before the Supreme Court on March 31, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The plaintiffs, Peter J. Sangermano, Jr. (Sangermano) and Sanat Properties, LP (Sanat), appeal from the trial justice's grant of the defendant's, Roger Williams Realty Corporation (Realty), motion for summary judgment.[1] After reviewing the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown; thus, the appeal may be decided at this time. We affirm the judgment of the Superior Court.

In the spring of 1996, Realty, a wholly-owned subsidiary of the Roger Williams Medical Center (the Medical Center), and Sanat, became equal partners in a joint venture to build an assisted living facility, the Village at Elmhurst, LLC (the Village).[2] Sometime in 1997, Robert Urciuoli (Urciuoli), who was the president and chief executive officer of the Medical Center, approached Sangermano about hiring John Celona (Celona), a state senator, as a consultant for the Village. Sangermano ultimately agreed to hire Celona, after Realty assured Sangermano in writing that "Realty agrees to indemnify the Village * * * for any additional costs or expense associated with Celona's engagement as a consultant." Celona thereafter was employed at the Village—purportedly as a consultant—until 2004. Shortly after Celona's services were terminated, the Rhode Island Attorney General and the United States Attorney for the District of Rhode Island began a joint criminal investigation into Celona's alleged political corruption; he ultimately was indicted, prosecuted and incarcerated by both the state and federal authorities. Although Sangermano also was indicted in federal court, he subsequently was acquitted of all charges after a trial. In defending himself, Sangermano has alleged that he expended substantial amounts for attorneys' fees and costs amounting to $1,682,461.

Immediately after his acquittal, Sangermano demanded reimbursement for his legal fees and expenses from Realty in accordance with the indemnification letter. Realty denied the claim and plaintiffs filed this action in December 2006, in which Sangermano sought reimbursement for himself[3] and for Sanat on behalf of the

---

1. We note that the Village at Elmhurst, LLC is a nominal defendant in this case.

2. At the time the joint venture was formed, Sangermano and Natco Products Corporation were Sanat's general partners; however, in April 1998, Sangermano Realty, of which Sangermano was a director, took over San-

germano's role as general partner of Sanat. Sangermano remained a manager of the Village.

3. Sangermano asserts that indemnification ultimately flows to him via Sanat's and Sanger-

Village. In July 2008, plaintiffs filed a motion for partial summary judgment on the issue of liability. Realty responded with a cross-motion for summary judgment, asserting that plaintiffs could not establish an enforceable indemnification agreement for attorneys' fees and costs in connection with a criminal investigation and prosecution. The trial justice issued a written decision, granting summary judgment in favor of defendant. The trial court strictly construed the indemnification agreement, and concluded that the letter did not contain specific language authorizing indemnification for attorneys' fees and litigation expenses. Therefore, plaintiffs' motion was denied and defendant's motion for summary judgment was granted. The plaintiffs timely appealed.

Before this Court, plaintiffs argue that the trial justice erred in strictly construing the letter and also contend that the letter was sufficiently specific to cover their claims. They also argue that genuine issues of material fact exist in this case, which should have precluded the trial justice from granting defendant's cross-motion for summary judgment.[4]

This Court reviews a trial justice's grant of summary judgment *de novo.* *Beacon Mutual Insurance Co. v. Spino Brothers, Inc.,* 11 A.3d 645, 648 (R.I.2011). "Summary judgment is appropriate when no genuine issue of material fact is evident from 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' and the motion justice finds that the moving party is entitled to prevail as a matter of law." *Sansone v. Morton Machine Works, Inc.,* 957 A.2d 386, 393 (R.I.2008) (quoting *Na-*

*tional Refrigeration, Inc. v. Travelers Indemnity Co. of America,* 947 A.2d 906, 909 (R.I.2008)).

The law in Rhode Island is well settled; "indemnity provisions are valid if sufficiently specific, but are to be 'strictly construed against the party alleging a contractual right of indemnification.' " *Sansone,* 957 A.2d at 393 (quoting *Muldowney v. Weatherking Products, Inc.,* 509 A.2d 441, 443 (R.I.1986)). *See Dower v. Dower's Inc.,* 100 R.I. 510, 513, 217 A.2d 437, 438 (1966) (in which this Court reiterated that the strict construction rule prohibits it from "draw[ing] inferences from words of general import found in the apparently all-inclusive and catchall language of a general indemnity provision").

Applying our rule of strict construction against the party alleging a contractual right—in this case the plaintiffs—we agree with the trial justice that the letter did not include language specific enough to encompass the indemnification of attorneys' fees and legal costs in a subsequent criminal prosecution. The plaintiffs and the defendant were sophisticated business partners and we are satisfied that if they had intended to include attorneys' fees in the indemnity provision, the agreement would have "stipulated to that effect, and not have left so important a matter in any doubt." *Railton v. Taylor,* 20 R.I. 279, 282–83, 38 A. 980, 982 (1897).[5]

Justice ROBINSON did not participate.

---

mano Realty's respective partnership and incorporation documents.

**4.** We note that plaintiffs do not set forth any alleged material facts to support their contentions.

**5.** We note that even were we to depart from our rule of strict construction with respect to

---

indemnification agreements, plaintiffs would still be required to overcome "the 'American rule' that litigants generally are responsible for their own attorneys' fees and costs."

*Pearson v. Pearson,* 11 A.3d 103, 108 (R.I. 2011) (quoting *Downey v. Carcieri,* 996 A.2d 1144, 1153 (R.I.2010)).