**Joseph SANSONE**

v.

**MORTON MACHINE WORKS, INC., et al.**

**Morton Machine Works, Inc.**

v.

**Bristol Yarn Corp. et al.**

Nos. 2005–72–Appeal, 2006–163–Appeal.

Supreme Court of Rhode Island.

Oct. 21, 2008.

James Oswald, Providence, for Plaintiff.

Michael DeLuca, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

**O P I N I O N**

Chief Justice WILLIAMS, for the Court.

The defendant/third-party plaintiff, Morton Machine Works, Inc. (Morton), appeals from the Superior Court's grant of a motion for summary judgment in favor of the third-party defendants, Robin Rug, Inc. (Robin) and Bristol Yarn Corp. (Bristol Yarn) (collectively third-party defendants), and the denial of Morton's cross-motion for summary judgment. Morton also appeals from the Superior Court's denial of its motion to vacate the entry of final judgment. We additionally address the filing of Morton's second third-party complaint against Bristol Yarn. For the reasons hereinafter set forth, we affirm the orders of the Superior Court with respect to the motions for summary judgment and the motion to vacate, but vacate the order granting Morton's second third-party complaint.

**I**

**Facts and Travel**

On July 20, 1998, plaintiff, Joseph Sansone (plaintiff), suffered severe personal injuries when operating a raw stock dyeing machine while working as an employee of Robin, a rug manufacturing facility in Bristol, Rhode Island. A raw stock dyeing machine (dyeing machine or machine) consists of two separate tanks, a main kier and an expansion tank, connected together by a series of pipes. The plaintiff allegedly was injured by a spray of an acidic mixture propelled from the expansion tank. Robin's workers' compensation carrier paid plaintiff benefits in accordance with the existing policy.

The dyeing machine was manufactured by Morton in 1969, but purchased in used condition by Bristol Yarn from the Frank G.W. McKittrick Company, Inc. (McKittrick), in 1989. Six years before plaintiff's accident, in 1992, Robin contracted with Morton to service the dyeing machine; specifically, Morton replaced the triple safety lock system and the locking ring on the main kier component of the machine and "all necessary switches, valves, relays, and parts." Morton provided a quotation for the service and sale of this equipment, which included an indemnification provision.

The plaintiff brought suit against Morton and McKittrick, alleging breach of warranty, negligent design, and strict

products liability.[1] Morton, however, subsequently filed a third-party complaint against Robin[2] and Bristol Yarn, seeking "contractual indemnity and/or contribution."

The third-party defendants moved to dismiss Morton's third-party complaint pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure on July 18, 2003. Because plaintiff had been paid workers' compensation benefits on behalf of his employer, Robin's, insurance carrier, the third-party defendants argued that G.L. 1956 § 28–29–20 of the Workers' Compensation Act barred Morton's claim for contribution against Robin. As for Bristol Yarn, the joint memorandum to support third-party defendants' motion to dismiss represented that it was Robin who had purchased the dyeing machine and that Bristol Yarn operates a separate business from Robin "at a separate location." Therefore, they submitted, the lack of any connection among Bristol Yarn, plaintiff, and Morton barred any claim for contribution against Bristol Yarn. The third-party defendants further argued that Morton's prayer for contractual indemnity should be dismissed because of an absence of any contract between Morton and themselves.

Morton conceded that the contribution claim should be dismissed as a matter of law, but objected to the dismissal of its contractual indemnification claim, based upon the existence of certain language in the quotation that it had provided to Robin when it replaced the triple safety lock system in 1992. Pursuant to an order entered on August 27, 2003, the motion justice granted in part and denied in part third-party defendants' motion to dismiss;

she dismissed Morton's contribution claim against both Robin and Bristol Yarn while declining to dismiss its claim for contractual indemnification.

Morton, however, later propounded interrogatories to Bristol Yarn, which included questions about whether Bristol Yarn had ever owned the dyeing machine; its possession, use, and repair history of the machine; and its relationship with Robin. On October 21, 2003, both Robin and Bristol Yarn provided joint answers to Morton's interrogatories, revealing that not only had Bristol Yarn in fact purchased the dyeing machine from McKittrick in 1989, but also continued to own it. Moreover, third-party defendants admitted that the two "share [a] common ownership and are affiliated companies," are located at the same address, and share the same corporate officers and directors. Indeed, an exhibit attached to McKittrick's answers to Morton's interrogatories, dated October 30, 2003, corroborated this information: McKittrick had sold the dyeing machine to Bristol Yarn in 1989. Morton, however, failed to act upon this information.

Thereafter, on June 1, 2004, third-party defendants filed a motion for summary judgment on Morton's remaining claim—contractual indemnification. Morton objected and cross-moved for summary judgment. By orders entered on October 1 and 7, 2004, a second motion justice granted third-party defendants' motion and denied Morton's cross-motion, finding that the indemnification provision of the quotation covered only injuries relating to the triple safety lock system, not the entire

---

**1.** Frank G.W. McKittrick Company, Inc., is not involved in either of these appeals, and filed a suggestion of bankruptcy on January 6, 2006.

**2.** Morton Machine Works, Inc., brought suit against both Robin Rug, Inc., and Robin Industries; subsequently, however, Robin Rug, Inc., merged into Robin Industries, causing the former to cease existence as a separate entity.

machine, and that no genuine issue of material fact existed disputing the allegation that plaintiff's injuries were caused by a malfunction on the expansion tank. The third-party defendants thereafter moved for an entry of final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. The motion justice granted this motion and entered an order to that effect on December 10, 2004. Six days later, Morton filed a notice of appeal from that judgment.

On May 11, 2005, however, while the appeal was pending with this Court, Morton filed a motion in Superior Court to vacate the judgment against Bristol Yarn on the contribution claim, pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure. Morton argued that it had conceded dismissal of its contribution claim only because it was under the mistaken belief, based on third-party defendants' representations, that Robin owned the dyeing machine that allegedly caused plaintiff's injury. Morton, therefore, argued that the final judgment entered on December 10, 2004, should have been vacated because of "mistake, inadvertence, surprise, or excusable neglect," under Rule 60(b)(1); fraud, misrepresentation, or "other misconduct of an adverse party," under Rule 60(b)(3); or for "any other reason justifying relief," under Rule 60(b)(6).

Acknowledging the appeal already pending in this Court, a third motion justice denied Morton's motion without prejudice. At Morton's request, however, we remanded the case to the Superior Court on September 22, 2005, for the specific purpose of allowing that court to hold a hearing on the motion to vacate. A renewed motion to vacate was denied by a fourth motion justice on the grounds that Morton did not file its Rule 60(b) motion within a reasonable time. Morton filed a timely appeal.

We consolidated the two appeals on September 18, 2007.

After the case was remanded for the particular purpose of conducting a hearing on the motion to vacate, and before the case returned to this Court, Morton moved the Superior Court for leave to file a second third-party complaint against Bristol Yarn, this time alleging equitable indemnification. No objection having been filed, a fifth motion justice granted Morton's motion by rule of court, based on Rule 7(b)(3) of the Superior Court Rules of Civil Procedure. The third-party defendants answered the complaint with a Rule 12(b)(6) motion to dismiss. The Superior Court never heard this motion, and the papers were returned to this Court. At conference, we directed the parties to brief this issue for consideration.

## II

### Analysis

On appeal, Morton argues that the second motion justice erred in denying its cross-motion for summary judgment on the contractual indemnity claim and in granting third-party defendants' cross-motion with respect to the same. Morton contends that the motion justice applied an unduly narrow interpretation to the language of the indemnification contract between Morton and third-party defendants. Moreover, Morton argues, based upon what it submits is the proper interpretation of the indemnification provision, there exists a genuine issue of material fact as to whether plaintiff was injured by the triple safety lock system, requiring reversal of the motion justice's granting of third-party defendants' motion for summary judgment.

Secondly, Morton argues that the fourth motion justice abused her discretion when she denied Morton's motion to vacate on the grounds that it was filed unreasonably

late, in contravention of Rule 60(b). Specifically, Morton contends that its delay was reasonable given the circumstances; the time of its filing having been caused by the inaccurate representations of third-party defendants.

Thirdly, concerning Morton's second third-party complaint, Morton argues that the Superior Court has subject-matter jurisdiction over that complaint and that the complaint should survive third-party defendants' motion to dismiss, which was filed, but has not yet been heard by the Superior Court.

## A

### Contractual Indemnity

We first address the motion justice's granting of third-party defendants' motion for summary judgment on Morton's contractual indemnification claim and his denial of Morton's cross-motion for the same.

Morton's claim for contractual indemnity is based on a section of the quotation for the triple safety lock system that Robin purchased in 1992. The relevant provision, entitled "Operation of Equipment," provides as follows:

"In its use and operation of the machinery and equipment ordered, Purchaser shall use and require its personnel to use all safety devices and guards provided with same, shall not remove or modify any such device, guard or warning sign, and will require adherence to safe operating procedures at all times. In no event shall Morton be liable for any damage to person or property at any time arising from Purchaser's misuse and operation of said machinery or equipment, or from defective products produced by Purchaser therewith, and Purchaser shall indemnify and save Morton harmless from any and all claims, demands and causes of action of

of [sic] every nature that might be asserted against Morton with respect to any such claim or damage. Purchaser shall bear full responsibility for any damage to the machinery or equipment resulting from Purchaser's use of chemicals, combinations of chemicals, or combinations of chemicals and temperatures which might adversely affect the particular type of metal or material included in the equipment or machinery or any component thereof."

The third-party defendants contend that the quotation's clear and unambiguous language restricts indemnity to "misuse and operation" or "from defective products produced" by "the machinery and equipment ordered"; that is, they read the indemnification language as applying only to the specific merchandise purchased from Morton in connection with the quotation. Because the triple safety lock system was the "machinery and equipment ordered" and the "misuse and operation" of that system was not the cause of plaintiff's injuries, they argue, the indemnity provision does not apply to the instant case. Further, third-party defendants submit that plaintiff's injuries were caused by a failure of the expansion tank, not the triple safety lock system, and that there exists no dispute of material fact on the issue.

Morton, on the other hand, argues for a broader interpretation of the indemnity clause. First, it argues that the clear and unambiguous language of the indemnification provision applies to both the triple safety lock system and to the dyeing machine itself, and to all injuries caused therefrom. Secondly, Morton argues that, because the triple safety lock system is essential to the functioning of the entire dyeing machine, any damages attributed to the "misuse and operation" of the machine are covered by the indemnity provision, regardless of whether this Court restricts

the language of the indemnity provision to one component. Finally, Morton argues that there is a genuine issue of material fact as to whether plaintiff was injured by the triple safety lock system.

## 1

### Standard of Review

■ "This Court reviews a grant of summary judgment *de novo*, applying the same standards as the motion justice." *National Refrigeration, Inc. v. Travelers Indemnity Co. of America*, 947 A.2d 906, 909 (R.I.2008) (quoting *Smiler v. Napolitano*, 911 A.2d 1035, 1038 (R.I.2006)). "Summary judgment is appropriate when no genuine issue of material fact is evident from 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' and the motion justice finds that the moving party is entitled to prevail as a matter of law." *Id.* (quoting *Smiler*, 911 A.2d at 1038 and Super. R. Civ. P. 56(c)).

## 2

### Interpretation of the Indemnification Provision

■ Our law is well settled that indemnity provisions are valid if sufficiently specific, but are to be "strictly construed against the party alleging a contractual right of indemnification." *Muldowney v. Weatherking Products, Inc.*, 509 A.2d 441, 443 (R.I.1986) (citing *DiLonardo v. Gilbane Building Co.*, 114 R.I. 469, 471 n. 1, 334 A.2d 422, 423 n. 1 (1975)). *See also Rhode Island Hospital Trust National Bank v. Dudley Service Corp.*, 605 A.2d 1325, 1327 (R.I.1992). Here, Morton takes issue with the motion justice's "narrow interpretation" of the indemnity provision; but Morton's argument ignores the fact that our law requires precisely that approach.

■ Morton first argues that the phrase "machinery and equipment ordered" in the first sentence of the indemnity provision refers not merely to that which was "ordered" in connection with the quotation, but separately to "machinery" and to "equipment ordered." In other words, Morton contends that the quotation's indemnity provision applies both to the "machinery" (the entire dyeing machine) and to "equipment ordered" (in this case the safety lock purchased in connection with the quotation). Thus, it argues, the lower court erred in failing to apply the indemnity provision to the instant dispute.

The third-party defendants, on the other hand, argue that the phrase "machinery and equipment ordered" refers only to that which was purchased or "ordered" from Morton in 1992 in connection with the quotation. Such an interpretation allows indemnification only for damages caused by the triple safety lock system. Therefore, if there is no genuine issue of material fact that plaintiff's injuries were not caused by that component, third-party defendants contend that we must affirm the judgment of the Superior Court.

Applying the long-standing principle that indemnification provisions are to be strictly construed against the party asserting a right of indemnification, we hold that the provision at issue applies only to the components purchased from Morton in 1992. *See Muldowney*, 509 A.2d at 443. A plain reading of the clear and unambiguous language of the provision leads inevitably to the conclusion that the phrase "machinery and equipment ordered" refers only to that which was "ordered" in connection with the indemnity provision. To suggest that the phrase includes "machinery" as a separate concept from "equipment ordered" unnecessarily complicates the clear language and transgresses our law requiring strict construction of such

provisions against the party asserting them.

Accordingly, we hold that the indemnity provision applies only to the "machinery and equipment ordered" in connection with the quotation: in this case, the triple safety lock system.

■ Morton additionally contends that there exists a distinction within the section of the indemnification provision that specifically relates to damages, requiring it to be read in two parts. The section provides:

> "In no event shall Morton be liable for any damage to person or property at any time arising from Purchaser's misuse and operation of said machinery or equipment, or from defective products produced by Purchaser therewith, *and* Purchaser shall indemnify and save Morton harmless from any and all claims, demands and causes of action of of [sic] every nature that might be asserted against Morton with respect to any such claim or damage." (Emphasis added.)

Although Morton agrees that the clause preceding the disjunctive "and" refers back to the "machinery and equipment ordered," it contends that the second clause, following the disjunctive, exists independently, referring only to itself. That is, the second clause does not restrict indemnification to damages caused by the purchaser's "misuse and operation" of the "machinery and equipment ordered" in connection with the quotation, but rather "to any claim or demand or cause of action" a plaintiff may have against Morton.

Such an interpretation also flies in the face of our law requiring the strict construction of indemnity provisions. *See Muldowney*, 509 A.2d at 443. Morton's interpretation would allow an indemnity provision, clearly and unambiguously connected to a specific piece of equipment, to extend to other components purchased previously, from a different vendor, and themselves not covered by any preexisting indemnification contract. We cannot countenance such a result.

Morton alternatively argues that should this Court hold (as we do) that the indemnity provision applies only to the triple safety lock system, the indemnity provision nonetheless applies to the instant situation. Specifically, Morton submits that, because the dyeing machine would be inoperable without the triple safety lock system it therefore is an essential component. As such, any damages resulting from "misuse and operation" of the machine logically must be attributed to all components.

The clear language of the indemnity provision, however, suggests no such conclusion. Indeed, as explained above, the indemnity provision applies only to the "machinery and equipment ordered" in connection with the sales contract at issue. The relevant provision nowhere provides that, in addition to the merchandise ordered, it applies also to any machinery and equipment to which that merchandise becomes a component.

The motion justice provided an apt analogy: if a buyer purchased a spring subject to an indemnity agreement mirroring that at issue here, the manufacturer would have a claim of indemnity against the buyer for damages caused by the latter's misuse and operation of the spring. However, Morton's interpretation would broaden this limited indemnity to include any machine in which the spring was used as a necessary component—regardless of whether the misuse and operation of the spring itself was the cause of injury. Again, the rule of strict construction governing indemnification contracts bars such a result.

We hold, therefore, that the indemnification provision applies only to that mer-

chandise that was "ordered" in connection with the quotation and only to damages resulting from the "misuse and operation" of that merchandise or defective products produced therewith.

### 3

### Issue of Material Fact

■ Having determined that the quotation's indemnity provision applies only to "misuse and operation" of the triple safety lock system (or from "defective products produced" in connection with that equipment), we now must decide if there is a genuine issue of material fact as to whether "misuse and operation" of that component resulted in plaintiff's injuries.

To support their motion for summary judgment, third-party defendants presented the deposition testimony of Charles William Burgin, Morton's Super. R. Civ. P. 30(b)(6) designee. Mr. Burgin testified that plaintiff's injuries were not the result of either plaintiff or third-party defendants' "misuse and operation" of the safety lock or any products created by use of that component.

Morton, however, also presented other portions of the deposition testimony of Mr. Burgin, in which he stated that the dyeing machine would be inoperable without the safety lock. Therefore, Morton argues, although it may be undisputed that there was never any "misuse and operation" of the safety lock, a reasonable mind could draw the inference that there was "misuse and operation" of some other part of the machine, of which the safety lock is an integral part. Consequently, Morton contends, an issue of fact as to "misuse and operation" of the whole (or some other part) necessarily implicates the safety lock covered by the indemnification provision; thus, summary judgment in favor of third-party defendants was improperly granted.

It is well settled that "the drawing of inferences from undisputed facts is part of the fact-finding process." *Freitas v. Mello,* 821 A.2d 697, 699 (R.I.2003) (citing *Wickes v. Kofman,* 121 R.I. 698, 703, 402 A.2d 591, 593 (1979)). However, the inference that Morton argues was drawn by the motion justice concerns parts of the dyeing machine left uncovered by the indemnification provision. Having held that the indemnification provision applies only to the triple safety lock system, we are concerned only with "misuse and operation" of that component. Without evidence in contravention of Mr. Burgin's testimony that no "misuse and operation" of the safety lock caused plaintiff's injuries, we find no extant genuine issue of material fact.

We therefore affirm the judgment of the Superior Court, granting third-party defendants' motion for summary judgment and denying Morton's cross-motion for summary judgment.

### B

### Morton's Motion to Vacate

Morton further appeals the judgment of the Superior Court denying its motion to vacate on the grounds that it was untimely filed after the entry of final judgment. The facts, Morton contends, demonstrate that the date on which the motion was filed was indeed timely.

### 1

### Standard of Review

■ "Our review of a decision denying a motion to vacate a judgment [pursuant to Rule 60(b)] is limited to examining 'the correctness of the order granting or denying the motion, not the correctness of the original judgment.'" *Ryan v. Roman Catholic Bishop of Providence,* 941 A.2d 174, 187 (R.I.2008) (quoting *Greenfield Hill Investments, LLC v. Miller,* 934 A.2d 223, 224 (R.I.2007) (mem.)). "Accordingly,

a motion to vacate a judgment is left to the sound discretion of the Superior Court justice, and his or her ruling will not be disturbed on appeal absent an abuse of discretion." *Id.* (citing *Greenfield,* 934 A.2d at 224).

### 2

### Timeliness of Morton's Motion to Vacate

Rule 60(b) provides, in relevant part:

"On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; * * * (3) fraud * * *, misrepresentation, or other misconduct of an adverse party;* * * or, (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

█ A leading treatise notes that Rule 60(b)'s federal counterpart attempts a "proper balance" between two conflicting principles: to ensure that justice has been done, yet to effectuate an end to litigation. 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2851 at 227 (1995). Motions based on Rule 60(b) must therefore be brought within a "reasonable time" of the entry of the judgment that they propose to vacate. For such motions based upon the reasons set forth in Rule 60(b)(1), (2), and (3), the "extreme limit" of reasonableness permitted by the rule is one year, although a court may find a "reasonable time" to be less, "dependent on the facts and circumstances of each case." *Tierney v. Conley,* 590 A.2d 865, 866 (R.I.1991) (quoting *Murphy v. Bocchio,* 114 R.I. 679, 685, 338 A.2d

519, 523–24 (1975)). "Thus, undue delay may bar relief, even if the motion is made before the one-year period has expired." *Waldeck v. Domenic Lombardi Realty, Inc.,* 425 A.2d 81, 83 (R.I.1981).

█ Here, Morton's motion to vacate was brought on May 11, 2005, five months after the entry of final judgment. In her discretion, the motion justice found such a time period unreasonable. We affirm.

The motion justice considered the following facts. In their memorandum of law to support their motion to dismiss under Rule 12(b)(6), filed on July 18, 2003, third-party defendants inaccurately represented that (1) Bristol Yarn was not the owner of the dyeing machine and (2) that it had no relationship with either plaintiff or Morton. However, third-party defendants, on page three of their responses to Morton's interrogatories, filed October 21, 2003, in answer to interrogatory number two, revealed that Bristol Yarn had purchased the dyeing machine from McKittrick in 1989. The third-party defendants also provided, along with the interrogatory responses, a document labeled "Bristol Yarn Co. Inc. Fixed Asset Acquisitions," dated March 31, 1990, indicating that Bristol Yarn had acquired the dyeing machine from McKittrick. Moreover, two of Morton's own internal documents, dated August 26, 1992, and December 9, 1998, either list Bristol Yarn as the contact company for the dyeing machine or as the machine's owner. Some documents produced by third-party defendants, however, and provided by Morton in its supplemental appendix, demonstrate that Morton also conducted business with Robin.

Morton justifies the delay in filing its motion to vacate by its contention that it relied upon the representations made by third-party defendants in their memorandum of law supporting their motion to

dismiss; and, having conceded the contribution claim based upon such representations, it thereafter had focused only on the contractual indemnification issue. Thus, the responses to interrogatories, Morton claims, did not "resonate with counsel until later." Moreover, Morton avers, third-party defendants never directed anyone's attention to the inaccurate facts presented in their memorandum of law. Instead, they later provided accurate responses to interrogatories. When preparing for the appeal of the final judgment, Morton noticed third-party defendants' responses and filed its motion to vacate accordingly. And, as far as its internal documents are concerned, Morton argues that because it also submitted invoices and other documents to Robin it originally was confused about who owned the machine. Thus, Morton submits, given the circumstances, it filed its motion to vacate within a reasonable time, and the motion justice's decision to the contrary was an abuse of discretion.

The third-party defendants, however, counter that in addition to Morton's internal documents noting Bristol Yarn's relationship to the dyeing machine Morton should have become aware of the true nature of Bristol Yarn's connection to the instant dispute through the interrogatory answers filed on October 21, 2003—nearly fourteen months before the entry of final judgment (December 10, 2004), and nearly nineteen months before Morton filed its motion to vacate (May 10, 2005). Thus, third-party defendants argue that the motion justice did not abuse her discretion in deciding that Morton's motion to vacate was filed unreasonably late.

We hold that the motion justice's denial of Morton's motion to vacate, based upon her conclusion that it was not filed within a reasonable time, was not an abuse of discretion. Indeed, the facts and circumstances of the case demonstrate that despite the erroneous representations of third-party defendants, it was reasonable to determine that Morton should have known, long before final judgment was entered, of the error relating to the granting of third-party defendants' motion to dismiss on the contribution claim. *See Tierney,* 590 A.2d at 866. Morton did not challenge the dismissal at any other time throughout this case's long history. It was not until five months after final judgment was entered and after Morton filed an appeal, that it filed its motion to vacate. Morton's five-month delay after the entry of final judgment, then, certainly could be viewed as unreasonable.

Rather than conduct an independent inquiry into Bristol Yarn's relationship to the dyeing machine, including an inspection of its own internal documents, Morton chose to rely upon opposing counsel's representation of the facts in a memorandum of law. Morton also offers that it was sufficient to rely upon third-party defendants' memorandum pursuant to Rule 11 of the Superior Court Rules of Civil Procedure. It is, of course, an attorney's duty, under Rule 11, to provide the court with papers produced in good faith and well grounded in law and fact, to the best of his or her knowledge. In addition, as a matter of professional courtesy and fairness, third-party defendants should have taken care to contact and alert Morton to the inaccuracies in third-party defendants' memorandum. We expect a far greater proactive effort on the part of any attorney who becomes cognizant that he or she has made inaccurate statements in an earlier filing, whether intentional or unintentional. Ours is, and must remain, a noble profession that is civil and courteous in all we do. This does not excuse, however, Morton's failure to review its own documents, which should have occurred before the hearing on the motion to dismiss. Nor does it

excuse Morton's failure to read answers filed in response to the interrogatories that it propounded after that motion was granted.

Considering such facts, we cannot hold that the motion justice abused her discretion when she determined that Morton's delay of filing a motion to vacate after entry of final judgment was unreasonable under Rule 60(b).

## C

### Morton's Second Third– Party Complaint

After this case was docketed for appeal, and after Morton filed its motion to vacate with the Superior Court, Morton moved this Court to remand the case for the "limited purpose" of ruling on the motion to vacate. We granted that motion by an order, dated September 22, 2005, which stated, in no uncertain terms, that the remand was for a hearing on the motion to vacate.

In addition to seeking resolution of its motion to vacate, however, Morton filed in Superior Court a motion for leave to file a second third-party complaint against Bristol Yarn, alleging entitlement to equitable indemnification, which motion was granted by rule of court. The third-party defendants answered by a Rule 12(b)(6) motion to dismiss. The Superior Court never heard this motion, the papers having been returned to this Court. At conference, we asked the parties to brief the issue.

We hold that the Superior Court transgressed the extent of our remand by entertaining more than the remand's limited purpose as expressed in our order. We consistently have held that, on remand, the lower courts may not "exceed the scope of the remand or open up

the proceeding to legal issues beyond the remand." *Willis v. Wall,* 941 A.2d 163, 166 (R.I.2008). *See also RICO Corp. v. Town of Exeter,* 836 A.2d 212, 218 (R.I. 2003); *Lemek v. Washington Oaks, Inc.,* 524 A.2d 597, 598 (R.I.1987); *Valley Gas Co. v. Burke,* 415 A.2d 165, 165 (R.I.1980). Known as the "mandate rule," this doctrine "provides that a lower court on remand must implement both the *letter and spirit* of the [appellate court's] mandate, and may not disregard the explicit directives of that court." *RICO Corp.,* 836 A.2d at 218 (quoting *Tollett v. City of Kemah,* 285 F.3d 357, 364 (5th Cir.2002)). Indeed, "the opinions of this Court speak forthrightly and not by suggestion or innuendo" and it is therefore "not the role of the trial justice to attempt to read 'between the lines' of our decisions." *Willis,* 941 A.2d at 166 (quoting *Fracassa v. Doris,* 876 A.2d 506, 509 (R.I.2005)).

Because we remanded the case with the precise instruction that the Superior Court rule on Morton's motion to vacate, we vacate that court's order granting Morton's motion for leave to file a second third-party complaint. *See Lemek,* 524 A.2d at 598.

### Conclusion

For the foregoing reasons, we affirm the judgments of the Superior Court with respect to the parties' respective motions for summary judgment and Morton's motion to vacate. We vacate the Superior Court's order granting Morton's motion for leave to file a second third-party complaint.