# United States Court of Appeals
## For the First Circuit

No. 21-1745

JOHN CARUSO,

Plaintiff,

v.

OMNI HOTELS MANAGEMENT CORPORATION, d/b/a OMNI HOTEL,

Defendant, Appellant,

ULTIMATE PARKING, LLC,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Gelpí, Circuit Judges.

Eli Jason S. Mackey, with whom C. Stephen Setliff, Setliff Law, P.C., Charles D. Blackman, and Levy & Blackman LLP were on brief, for appellant.
Nancy Kelly, with whom Benjamin O'Grady and Gordon Rees Scully Mansukhani, LLP were on brief, for appellee.

March 2, 2023

**LIPEZ, Circuit Judge**.  While staying at the Omni Hotel in Providence, Rhode Island, John Caruso was injured when he tripped and fell on the curb that separates the hotel's valet driveway from its main entrance.  Caruso sued both the hotel's valet operator, appellee Ultimate Parking, LLC ("Ultimate"), and the hotel's owner, appellant Omni Hotels Management Corp. ("Omni"), blaming his accident on their allegedly negligent maintenance of the premises and the allegedly dangerous driveway curb.  After Ultimate settled the case with Caruso on behalf of itself and Omni, Omni sought indemnification from Ultimate for its attorney's fees.  The district court granted summary judgment for Ultimate on Omni's indemnification crossclaims, holding that neither the parties' contractual agreement nor Rhode Island common law entitled Omni to such relief.  Caruso v. Omni Hotels Mgmt. Corp., 559 F. Supp. 3d 69, 72-73 (D.R.I. 2021).  Disagreeing with the district court's reading of the parties' contract and Rhode Island law, we conclude that Omni is entitled to indemnification. We therefore vacate the judgment for Ultimate and direct the district court on remand to enter judgment for Omni.

**I.**

**A.  Background**

Caruso's accident occurred in May 2016 while he was helping his niece carry luggage into the Omni Hotel from her car,

- 2 -

which was parked in the valet circle.  In his complaint,[1] Caruso alleged, inter alia, that Omni had a duty to warn guests "of the unreasonably dangerous and hidden step up/curb located within the valet circle" of the hotel and failed to "color code" the curb or otherwise "clearly demarcate" it.  Caruso also alleged that Ultimate had "negligently parked vehicles within and up against the curbing of the valet circle" and thereby caused, or contributed to causing, him "to trip and fall and sustain serious personal injuries."

Ultimate operates the hotel's valet and parking services pursuant to a contract with Omni, titled "Concession Agreement," that includes provisions in which the two companies agreed to defend and indemnify each other in certain circumstances.  The provision pertinent to this appeal states:

> Ultimate shall indemnify and hold harmless [Omni] from and against any and all liability, claims, liens, losses, expenses and judgments of every kind whatsoever, by whomsoever asserted, on account of claims or demands of every character occurring on or in any way incident to, or arising from or in connection with any act or failure to act by Ultimate or any of its agents, contractors, servants, or employees in the operation of the Business during the term of this Agreement, <u>provided that no such claim arises from any set of negligence or intentional acts or misconduct</u>

---

[1] Caruso filed his original complaint in Rhode Island state court only against Omni, and Omni subsequently removed the action to federal court based on diversity jurisdiction.  Caruso then filed an amended complaint adding Ultimate as a defendant and alleging an additional claim solely against it.

> of [Omni] or any of its employees, subsidiaries, affiliates, officers, agents, contractors or parent company. In the event indemnification is proper, Ultimate, upon reasonable notice from [Omni], shall at Ultimate's expense, resist or defend such action or proceeding and employ counsel therefor reasonably satisfactory to [Omni] . . . .

(Emphasis added.) Relying on this provision and Rhode Island caselaw, Omni filed crossclaims against Ultimate in Caruso's action asserting rights to contractual and equitable, or common-law, indemnification for its litigation costs.[2]

Both defendants moved for summary judgment on Caruso's claims, but the district court denied the motions on the ground that a factfinder needed to decide "whether either or both [d]efendants were negligent and whether any negligence was a proximate cause of the [p]laintiff's injuries." The settlement followed, and, upon Caruso's motion to dismiss his claims, the district court dismissed the case in its entirety. Omni objected to the dismissal of its crossclaims against Ultimate, which the district court reinstated but then rejected in a summary judgment ruling in favor of Ultimate.

---

[2] Omni also sought contribution from Ultimate, but that claim became moot because Omni had no financial obligation to Caruso under the settlement agreement. See Caruso, 559 F. Supp. 3d at 70 n.1.

- 4 -

**B. The District Court's Indemnification Decision**

In concluding that Omni was not entitled to indemnification under the Concession Agreement, the district court ruled that the contractual exclusion for a "claim [that] 'arises from' Omni's negligence, intentional acts, or misconduct" was triggered by Caruso's allegation that Omni's negligence contributed to his fall and injuries. Caruso, 559 F. Supp. 3d at 72. The court rejected Omni's argument that the exception to Ultimate's indemnification obligation, as stated in the Concession Agreement, applies only if there is a finding of negligence by Omni and not merely a claim of negligence. Rather, the court held, "[t]he fact that the claims brought in this suit overwhelmingly charged negligence on the part of Omni[3] is sufficient for finding that the claims 'arose from' Omni's negligence -- precluding indemnification." Id.

The district court found support for its conclusion in Rhode Island cases involving indemnification clauses with language it read as "decidedly distinct from the language of the [Concession] Agreement here." Id. The court explained:

> Specifically, in Walsh [v. Lend Lease (US) Constr., 155 A.3d 1201, 1205 (R.I. 2017)], the contract provided indemnification was not required "if such injury . . . is caused by

---

[3] The court pointed out that Count I of Caruso's complaint "contains multiple allegations of negligence solely against Omni" and Count II "contains similar allegations against Ultimate and, again, Omni." Caruso, 559 F. Supp. 3d at 72.

the sole negligence of a party indemnified hereunder." In Manning [v. New Eng. Power Co., No. PC98-5091, 2004 WL 3190204, at *2 (R.I. Super. Ct. Dec. 22, 2004)], the agreement stated indemnification was not required "if such claims . . . are caused by the negligence of a party identified hereunder." In contrast to the narrow language of "sole negligence," or the definitive requirement of "caused by," the instant Agreement precludes indemnification if the claim "arises from" Omni's negligence, intentional acts, or misconduct.

Id. (omissions in original) (citations omitted). In other words, the court concluded that, because "arising from" connotes a broader scope of responsibility than "caused by," a claim "arises from" negligence if it is premised on allegations of negligence -- "regardless of the[] actual veracity [of those allegations], or what a factfinder might find were the claims to go to trial." Id.

The court also rejected Omni's common-law indemnification claim. It found that Omni had failed to satisfy the requirements established through caselaw for such a claim, specifically, the liability of both prospective indemnitor and indemnitee to a third party. See id. at 73; see also, e.g., Muldowney v. Weatherking Prods., Inc., 509 A.2d 441, 443 (R.I. 1986) (reciting the three requirements for common-law indemnification). The court reasoned that neither Ultimate nor Omni had been found liable to a third party -- given the settlement agreement reached with Caruso and subsequent dismissal of Caruso's

claims -- and, hence, the required elements of a common-law claim had not been met. Caruso, 559 F. Supp. 3d at 73.

On appeal, Omni challenges the district court's indemnification rulings and the court's earlier denial of its motion for summary judgment on Caruso's negligence claims. Omni asserts that the court incorrectly concluded that mere allegations of negligence suffice to render the contractual indemnification obligation inoperative. And, Omni argues, because the court should have found an absence of negligence on its part as a matter of law when Omni moved for summary judgment on Caruso's claims, it is entitled to indemnification pursuant to the Concession Agreement. Omni further claims that, even if it is not entitled to contractual indemnification, common-law indemnification applies here because "Caruso alleg[ed] active negligence on Ultimate's part and only passive negligence on Omni's."

## II.

As we shall explain, the district court's rejection of Omni's right to contractual indemnification was premised on an incorrect view of both Rhode Island law and the language of the Concession Agreement.

## A.  Standard of Review and Applicable Law

We review de novo the district court's grant of summary judgment in favor of Ultimate. See, e.g., Shea v. Millett, 36 F.4th 1, 6 (1st Cir. 2022). Under Rhode Island law, which applies

- 7 -

in this diversity case, we owe no deference to the district court when construing unambiguous contract language, see, e.g., Furtado v. Goncalves, 63 A.3d 533, 537 (R.I. 2013), and the determination of whether contract language is ambiguous is itself a legal question subject to de novo review, Mgmt. Cap., L.L.C. v. F.A.F., Inc., 209 A.3d 1162, 1173 (R.I. 2019). Contract terms that are "clear and unambiguous" are "given their usual and ordinary meaning." Id. (quoting Andrukiewicz v. Andrukiewicz, 860 A.2d 235, 238 (R.I. 2004)); see also Boschetto v. Boschetto, 224 A.3d 824, 829 (R.I. 2020).

Rhode Island courts have long treated indemnity provisions as "valid if sufficiently specific," but have directed that such provisions "are to be 'strictly construed against the party alleging a contractual right of indemnification.'" Sansone v. Morton Mach. Works, Inc., 957 A.2d 386, 393 (R.I. 2008) (quoting Muldowney, 509 A.2d at 443).[4] However, contract terms are not

---

[4] Rhode Island's strict construction policy for indemnification provisions appears to stem from a view that such provisions are disfavored when they "negate liability for an individual's own negligence." R.I. Hosp. Tr. Nat'l Bank v. Dudley Serv. Corp., 605 A.2d 1325, 1327 (R.I. 1992) (emphasis added). Indeed, Rhode Island courts adopted the "rule of strict construction" in the context of a defendant landlord seeking to be exempted from liability for damages resulting from his own negligence. Dower v. Dower's Inc., 217 A.2d 437, 439 (R.I. 1966) (discussing Railton v. Taylor, 38 A. 980, 982 (R.I. 1897)). Other courts have explained that the purpose of such a rule is "to insure that one agreeing to the extraordinary liability of indemnifying another against his own negligence [is] fully aware of the extent of his liability." Applied Indus. Materials Corp. v. Mallinckrodt,

ambiguous simply because their meaning is disputed. <u>Young</u> v. <u>Warwick Rollermagic Skating Ctr., Inc.</u>, 973 A.2d 553, 560 (R.I. 2009). In the context of insurance policies -- which also are strictly construed in Rhode Island in favor of one party -- the Rhode Island Supreme Court has cautioned against "engaging in mental gymnastics or . . . stretching the imagination to read ambiguity into a [provision] where none is present." <u>New London Cnty. Mut. Ins. Co.</u> v. <u>Fontaine</u>, 45 A.3d 551, 557 (R.I. 2012) (quoting <u>Beacon Mut. Ins. Co.</u> v. <u>Spino Bros., Inc.</u>, 11 A.3d 645, 649 (R.I. 2011)).

## B. "Arises from" vs. "Caused by"

The district court's finding that Omni is not entitled to indemnification under the Concession Agreement rested on its view that, in the context of an indemnification exclusion, a claim

---

<u>Inc.</u>, 102 F. Supp. 2d 934, 943 (N.D. Ill. 2000) (quoting <u>Duffy</u> v. <u>Poulos Bros. Constr. Co.</u>, 587 N.E.2d 1038, 1041 (Ill. App. Ct. 1991) (alteration in original)).

Consistent with this rationale for strictly construing indemnity provisions, a Rhode Island statute expressly bars, on public policy grounds, provisions in construction-related contracts that "purport to indemnify the promisee for personal injury or property damage caused by or resulting from the promisee's own negligence." <u>Rodrigues</u> v. <u>DePasquale Bldg. & Realty Co.</u>, 926 A.2d 616, 620 n.2 (R.I. 2007) (describing R.I. Gen. Laws § 6-34-1 (1956)). We think it likely that Rhode Island courts would closely scrutinize similar indemnity provisions in other commercial contexts and would be less strict with provisions, like the one at issue here, that do not indemnify a party for its own negligence. In any event, our assessment of the disputed provision in this case does not depend on the level of scrutiny applied.

- 9 -

that "arises from" negligence -- the terminology used in the Concession Agreement -- materially differs from a claim that is "caused by" negligence. The former term, according to the court, extends more broadly to encompass as-yet unproven allegations of negligence. Caruso, 559 F. Supp. 3d at 72.

Relying on that difference in meaning, the court distinguished the two "analogous" Rhode Island cases cited in its decision, Walsh and Manning, because they used the language of "caused by." Id. at 71-72. Hence, the court deemed "inapposite" the conclusions in Walsh and Manning that a finding of negligence was necessary to foreclose indemnification. See id. at 72; see also Walsh, 155 A.3d at 1205-06 (stating that the reference to injury "caused by the sole negligence" of the potential indemnitee "predicates" indemnification on a "partially fact-based" finding that "has yet to be made"); Manning, 2004 WL 3190204, at *3 (recognizing that an indemnification provision using "caused by" language "expressly excludes from its terms those instances in which the indemnitee is deemed to be negligent").[5] The district court thus rejected Omni's argument that "a judicial determination

---

[5] The Manning court also made clear that when a party is "deemed negligent," there ordinarily would be a factual finding to that effect. See 2004 WL 3190204, at *3 ("In general, an act or omission is not deemed negligent until competent evidence establishes a causal relationship between the act and an injury.").

- 10 -

of negligence on the part of Omni [is required] before indemnification is precluded." Caruso, 559 F. Supp. 3d at 72.

We disagree that Rhode Island law draws the distinction in terminology on which the district court relied. Although Walsh and Manning both involved indemnification provisions using the "caused by" language, neither case considered whether "arises from" is equivalent to "caused by" in the context of indemnification provisions. They simply construed provisions that used the "caused by" language. See Walsh, 155 A.3d at 1205-06; Manning, 2004 WL 3190204, at *3. Meanwhile, other Rhode Island cases reveal that the state's courts would view "arising from" as used in the Concession Agreement as largely synonymous with "caused by."

For example, in Sansone, the indemnification provision at issue excluded a manufacturer's liability "for any damage to person or property at any time arising from Purchaser's misuse and operation of [certain] machinery or equipment." 957 A.2d at 392 (emphasis added). Despite the "arising from" language in the contract, the Rhode Island Supreme Court repeatedly used the language of "cause" when assessing the indemnification obligation. See, e.g., id. at 394 ("[I]f a buyer purchased [equipment] subject to an indemnity agreement mirroring that at issue here, the manufacturer would have a claim of indemnity against the buyer for damages caused by the latter's misuse and operation of the

- 11 -

[equipment]." (emphasis added)); id. (describing an interpretation of the agreement that would provide indemnification "regardless of whether the misuse and operation of the [equipment] itself was the cause of injury" (emphasis added)).  The court also used another variation of "caused by" -- i.e., another alternative to "arising from" -- when it noted that "we now must decide if there is a genuine issue of material fact as to whether 'misuse and operation' of that component resulted in plaintiff's injuries."  Id. at 395 (emphasis added).

The view that "arising from" may be used synonymously with "caused by" also is reflected in cases addressing indemnification provisions in insurance policies -- another context in which one party (the insurer) typically is assigned the obligation to defend and indemnify the other party (the insured) based on an underlying negligence claim.  See, e.g., Am. Com. Ins. Co. v. Porto, 811 A.2d 1185, 1189 (R.I. 2002).  In Porto, the Rhode Island Supreme Court construed a provision in an insurance policy that excluded from coverage "bodily harm, sickness, disease or death that arises out of" specified occurrences.  Id. at 1191 (emphasis added).  The court repeatedly equated "arises out of" with causation, at several points referencing an insurance treatise for the proposition that "'arising out of' means only that 'a causal connection' exists between the alleged injuries and the excluded subject matter."  See, e.g., id. at 1195 (citing Couch

on Insurance); see also id. at 1196 ("[T]he relevant inquiry for determining potential coverage under an insurance policy of this type is not the theories of relief in the complaint, but whether the injuries alleged by plaintiff have a causal connection with whatever type of conduct or situation that the policy has excluded from coverage."); id. at 1197 ("[i]nterpreting 'arising out of' . . . to mean having 'a causal connection to' the excluded matter").

To be clear, we are not suggesting that the meaning of "arises from" is entirely identical to that of "caused by." The district court here reasonably concluded that "arises from" may connote a broader range of triggering conduct. See Caruso, 559 F. Supp. 3d at 72; see also, e.g., Porto, 811 A.2d at 1194 n.5 (noting the understanding in some jurisdictions "that the phrase 'arising out of,' as used in exclusionary clauses of insurance policies, 'must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause'" (quoting Bagley v. Monticello Ins. Co., 720 N.E.2d 813, 816 (Mass. 1999)); Rischitelli v. Safety Ins. Co., 671 N.E.2d 1243, 1245 (Mass. 1996) ("The expression 'arising out of' indicates a wider range of causation than the concept of proximate causation in tort law."). But such variations in the breadth of causation play no role in this case, where the debate concerns the need for a finding of negligence versus allegations of negligence. On that question,

cases such as Sansone and Porto make clear that the Rhode Island Supreme Court would treat the Concession Agreement's reference to an injury that "arises from" a negligent act no differently from a provision referring to an injury that is "caused by" a negligent act. We reach that conclusion as a matter of law, having found, as explained above, that the equivalence in terminology is clear under the relevant Rhode Island precedent. See, e.g., Young, 973 A.2d at 558.

We thus hold that "arises from" in the pertinent phrase of the Concession Agreement carries materially the same meaning as "caused by." Hence, the question we must now consider is whether, with that equivalence, the provision eliminates Ultimate's obligation to indemnify Omni for claims related to Ultimate's business activities when a third party merely alleges negligence by Omni, without regard for whether it was in fact negligent.[6]

---

[6] Ultimate argues that, because Omni advanced a different view of the contract language when Ultimate attempted to add counter-crossclaims against it, Omni is foreclosed by the principle of judicial estoppel from now arguing that the exception to Ultimate's indemnification obligation depends on a factual finding that Omni was negligent. Specifically, and in relevant part, Omni asserted in its opposition to Ultimate's motion that "Plaintiff's Amended Complaint alleges a claim against Ultimate for Ultimate's own alleged negligence. . . . The plain language of the Agreement overtly disclaims any indemnification obligation by Omni where, as here, the claim against Ultimate arises from its own negligence." Caruso v. Omni Hotels Mgmt. Corp., No. 18-00277-JJM-LDA (D.R.I. Oct. 13, 2020) (Memorandum, at 12) (emphasis added and omitted).

We reject the applicability of judicial estoppel here. We see no basis for concluding that the district court relied on an

- 14 -

## C.  The Indemnification Obligation

Reduced to its relevant content, the indemnification provision states that Ultimate will indemnify Omni "against any and all liability, claims, . . . [and] expenses . . . on account of claims or demands of every character . . . arising from or in connection with any act or failure to act by Ultimate . . . in the operation of the Business . . . <u>provided that no such claim arises from any set of negligence or intentional acts or misconduct of [Omni]</u>."  (Emphasis added.)  This formulation describes Ultimate's indemnification obligation broadly: it covers claims stemming from "<u>any</u> act or failure to act by Ultimate," regardless of fault. (Emphasis added.)  The exclusion, however, covers only claims for which Omni bears responsibility because of its negligence, intentional acts, or misconduct.  In our view, that limitation is reasonably construed to withhold indemnification only when the claims at issue in fact arise from culpable conduct or inaction by Omni.  Indeed, it would make no sense for the Concession Agreement to excuse Ultimate from its contractual responsibility for its own

argument concerning the contract language in denying Ultimate's attempt to add the counter-crossclaims.  See, e.g., Perry v. Blum, 629 F.3d 1, 11 (1st Cir. 2010) ("The party proposing an application of judicial estoppel must show that the relevant court actually accepted the other party's earlier representation.").  The court stated that it denied Ultimate's motion because of its late timing and the resulting "expense and delay that [Omni] would likely face."  Caruso v. Omni Hotels Mgmt. Corp., No. 18-00277-JJM-LDA (D.R.I. Nov. 12, 2020) (order denying motion to amend, at 5).

- 15 -

actions based on third-party allegations against Omni that, as a factual matter, are meritless. See generally Muldowney, 509 A.2d at 443 ("The concept of indemnity is based upon the theory that one who has been exposed to liability solely as the result of a wrongful act of another should be able to recover from that party.").

Walsh confirms the correctness of that common-sense conclusion. The contract in Walsh also broadly described the indemnification obligation to cover all claims and costs "caused by, arising out of, resulting from, or occurring in connection with" the potential indemnitor's work performance -- without regard to fault -- and excluded only liabilities "caused by the sole negligence of" the indemnitee. 155 A.3d at 1205 (emphases omitted). The Rhode Island Supreme Court observed that "[t]he last clause plainly predicates [the indemnification] obligations under the contract on a finding that [the indemnitee] was not the only negligent party. Such a finding is partially fact-based and has yet to be made in the instant case." Id. at 1205-06 (footnote omitted). In other words, as here, the exception to indemnification was fault-based and, hence, required a finding of fact.[7]

_____

[7] Manning, an unpublished lower court decision, is less apt here as precedent because it considered whether the indemnification obligation itself depended upon a finding of negligence by the indemnitor. See 2004 WL 3190204, at *3. In

- 16 -

We see no basis in the language of the Concession Agreement for departing from the understanding in <u>Walsh</u> that an indemnification obligation contingent on the potential indemnitee's lack of negligence requires factfinding. Although Ultimate attempts to distinguish <u>Walsh</u> by highlighting the reference in the provision at issue there to "the <u>sole</u> negligence" of the party to be indemnified, 155 A.3d at 1205 (emphasis partially omitted), that limitation simply gives broader indemnification coverage than is provided by the Concession Agreement. That is, the indemnification obligation in <u>Walsh</u> remained intact even if the party entitled to indemnification was itself partially negligent. Only the indemnitee's "sole negligence" would negate indemnification. Here, by contrast, the obligation to indemnify is undone if the third-party's claims involve "any" negligent or intentional behavior or misconduct by Omni. <u>See</u> <u>Caruso</u>, 559 F. Supp. 3d at 71. A "sole negligence" limitation does not speak to whether indemnification turns on allegations or factfinding.

Nor are we persuaded that the Concession Agreement's language on the duty to defend requires a different understanding of the indemnification obligation. Ultimate highlights the

---

rejecting that contention, the court observed, as quoted above, that "an act or omission is [generally] not deemed negligent until competent evidence establishes a causal relationship between the act and an injury." <u>Id.</u>

statement in the indemnification provision imposing a duty to defend "[i]n the event indemnification is proper" and argues that whether "indemnification is proper" cannot depend on a finding concerning Omni's negligence because findings would not be made until after a defense is needed. Hence, the argument goes, Omni's right to indemnification -- along with Ultimate's duty to defend -- must be based on the third party's allegations.

Ultimate's argument has some force given that duty-to-defend provisions typically aim to relieve the beneficiary of more than just the expenses of litigation, as evidenced here by the contractual language requiring Ultimate to "resist or defend" actions against Omni and "employ counsel therefor." In the insurance context, Rhode Island recognizes as a background principle that "the duty to defend is broader in its scope than the duty . . . to indemnify," Emps. Fire Ins. Co. v. Beals, 240 A.2d 397, 403 (R.I. 1968), and Rhode Island courts provide that breadth through use of "the common 'pleadings test'" when construing an insurer's duty to defend, Travelers Cas. & Sur. Co. v. Providence Wash. Ins. Co., 685 F.3d 22, 25 (1st Cir. 2012) (applying Rhode Island law) (quoting Progressive Cas. Ins. Co. v. Narragansett Auto Sales, 764 A.2d 722, 724 (R.I. 2001)). Under the pleadings test, an insurer's duty to defend its insured against third-party claims is based on the allegations in the complaint

without regard for whether the insured will ultimately be found responsible for the third-party plaintiff's injuries.  Id.

The insurance context, however, differs from the commercial setting of this case.  As one court has observed, the pleadings test reflects the fact that "an insurance company's agreement to defend actions against the insured is one of the 'fundamental obligations' of the insurance contract."  Ervin v. Sears, Roebuck & Co., 469 N.E.2d 243, 249 (Ill. App. Ct. 1984) (quoting Kinnan v. Hurst Co., 148 N.E. 12, 14 (Ill. 1925)); see also id. at 249-50 (noting the "unique position of an insurance company as a professional 'seller' of protection against loss").  By contrast, in a business contract, "the agreement to defend and indemnify . . . is incidental to the main purpose of the agreement."  Id. at 249.  The pleadings test for insurance coverage also recognizes the unequal bargaining power that often exists in that context, another contrast with commercial agreements executed between two business entities.  See generally Siebe, Inc. v. Louis M. Gerson Co., 908 N.E.2d 819, 829 (Mass. App. Ct. 2009) (observing that "there may be factors underlying the development of insurance law that are not present in an arm's-length negotiated contract between two commercial actors, which would make the application of insurance principles inappropriate in a commercial setting"); cf. Johnson v. Mod. Cont'l Constr. Co., 731 N.E.2d 96, 99 (Mass. App. Ct. 2000) ("We do not consider coverage questions under an

insurance contract analogous to coverage under an indemnity provision of a construction contract.").

In Walsh, involving a commercial contract related to a construction project, the Rhode Island Supreme Court did not expressly consider whether, or how, the pleadings test applies to duty-to-defend provisions in business agreements. There, the text stated that the indemnitor had duties "to defend, indemnify and save harmless [the indemnitee]" and made those duties all subject to the same exclusion: that any injury not be caused "by the sole negligence of [the indemnitee]." Walsh, 155 A.3d at 1205. The Walsh court construed the "sole negligence" exclusion to require a finding of negligence, and it therefore held that the determination of whether the indemnitor had a duty to indemnify and to defend was contingent on such a finding. See id. at 1205-06 ("[The indemnitor] must defend and indemnify [the indemnitee] . . . predicate[d] . . . on a finding that [the indemnitee] was not the only negligent party." (emphases added)). Hence, even accepting Ultimate's contention that a duty to defend loses much of its force when contingent in this way, that outcome is consistent with Walsh and not in itself reason to construe the indemnification exception at issue here to rest on allegations rather than a finding.

The indemnification provision in the Concession Agreement is hardly a model of clear drafting, but, taken as a

whole, it is not reasonably read as Ultimate proposes. See generally Family Dollar Stores of R.I., Inc. v. Araujo, 272 A.3d 582, 588 (R.I. 2022) (stating that a contract's meaning must be ascertained by "view[ing] the agreement 'in its entirety'" (quoting Sturbridge Home Builders, Inc. v. Downing Seaport, Inc., 890 A.2d 58, 63 (R.I. 2005)). The provision first broadly states Ultimate's obligation to indemnify Omni for "expenses and judgments of every kind whatsoever" -- with the exception for claims involving Omni's own negligence -- and then refers specifically to the obligation to employ counsel and provide a defense. Ultimate's argument that indemnification must be linked to allegations, not facts, relies on isolating the duty-to-defend statement and disregarding the broadly stated purpose of the provision to hold Omni harmless when it bears no responsibility for the injuries claimed by a third party. Viewed in the context of the parties' reciprocal indemnification promises, however, the duty-to-defend statement is only reasonably understood to make explicit that the indemnification owed includes litigation expenses once it is determined that "indemnification is proper."

Moreover, a duty-to-defend clause that is contingent on a factual finding of negligence is not wholly ineffectual. In this case, for example, the parties might have agreed from the outset that the undisputed facts surrounding Caruso's trip and fall triggered Ultimate's defense obligation. Nor is the promise

- 21 -

of a defense meaningless if there is a dispute concerning indemnification that requires factual findings. It is common for parties to seek reimbursement after-the-fact for litigation expenses incurred when an opponent has denied its duty to defend. See, e.g., Vt. Mut. Ins. Co. v. Maguire, 662 F.3d 51, 51, 59 (1st Cir. 2011); Narragansett Jewelry Co. v. St. Paul Fire & Marine Ins. Co., 526 F. Supp. 2d 245, 246 (D.R.I. 2007).[8]

Importantly, the question in this case is not the scope of the indemnitor's obligation but the scope of an exception to that obligation. When two sophisticated business entities agree to indemnify each other for the consequences of their own conduct, common sense dictates that any exception be narrowly construed. Cf., e.g., Jackson v. Quincy Mut. Fire Ins. Co., 159 A.3d 610, 614 (R.I. 2007) ("[T]he guidepost in determining whether to apply a broad and liberal view of the terms in an insurance policy or whether a strict interpretation of the language is more appropriate

---

[8] It is also common for a party that disputes its duty to defend to provide a defense subject to a "reservation of rights" -- as Ultimate's insurer, Lexington Insurance Co., did in this case. Lexington (through its claims administrator, AIG Claims Inc.) said it would take over the defense of Caruso's claims after Ultimate exhausted its self-insured limit of $25,000. However, the insurer "reserve[d] its rights to refuse to indemnify Omni Hotel against any judgment . . . or settlement amount that does not fall within the scope of the contract's indemnification provisions." The insurer also "reserve[d] its rights to withdraw the defense being provided." According to Omni, the insurer never assumed Omni's defense because Ultimate did not reach its self-insurance limit.

is whether the language relates to inclusion of persons within the policy or exclusion of the insured from protection."). As explained above, to negate indemnification based solely on allegations of negligence against Omni -- regardless of their merit -- would render Ultimate's indemnification promise nugatory. That is not a reasonable interpretation of the parties' promises to protect each other from "expenses . . . of every kind whatsoever" when the potential indemnitee was not negligent. See, e.g., Family Dollar Stores of R.I., Inc., 272 A.3d at 588 (stating that the question in determining whether a contract is ambiguous is "whether the language has only one reasonable meaning when construed . . . in an ordinary common sense [sic] manner" (quoting Sturbridge Home Builders, Inc., 890 A.2d at 63 (omission in original) (emphasis omitted)).

Hence, whatever rationale prompted the specific language in the reciprocal indemnification provisions, we cannot conclude that Ultimate and Omni intended to withdraw their mutual promises of indemnification based on possibly unfounded allegations from a third party against the indemnitee. The Concession Agreement excuses Ultimate from indemnifying Omni for costs associated with Ultimate's actions or inaction only if those costs stem from claims that "arise[] from any set of negligence or intentional acts or misconduct" by Omni. Reading the exception to Ultimate's obligation narrowly, and consistently with Walsh, Ultimate's

- 23 -

commitment to indemnify Omni is negated only if Omni in fact bears some culpability for the third party's alleged harm -- a finding that to this point in the litigation has not been made. See Walsh, 155 A.3d at 1205-06.

**D. The Negligence Question**

The district court's erroneous construction of the Concession Agreement rendered the question of Omni's actual negligence irrelevant to its decision to grant summary judgment for Ultimate on Omni's indemnification crossclaim, and it therefore did not reach that issue. On appeal, Omni asserts that we should find as a matter of law that it was not negligent and, hence, that it is entitled to indemnification under the Concession Agreement. Omni makes that argument in the context of both district court orders that it challenges on appeal: (1) the denial of Omni's motion for summary judgment on Caruso's negligence claims, and (2) the grant of summary judgment for Ultimate on Omni's indemnification crossclaim. Omni asserts that it should have been found not negligent when it moved for summary judgment against Caruso, establishing the prerequisite for indemnification, and that it therefore should have prevailed on its contractual crossclaim against Ultimate.[9]

_____

[9] Omni seeks alternative forms of relief based on its challenges to the two orders. As we construe its requests, Omni's preferred outcome from this appeal is the entry of "final judgment in [its] favor on its contractual-indemnification and/or its

At oral argument before this court, Ultimate stated that it took no position, either in the district court or on appeal, on Omni's assertion that it should be found not negligent as a matter of law. However, it has offered multiple reasons why we should not reverse the district court's denial of summary judgment on Caruso's claims against Omni. First, Ultimate asserts that the ruling on Caruso's claims is moot because Caruso released Omni under the settlement agreement. Second, Ultimate contends that the district court's ruling on Caruso's claims "is irrelevant to Omni's [c]ross-claims under the Concession Agreement" because "the relevant question" is not Omni's actual negligence but only whether Caruso alleged negligence.

These contentions ignore the possibility that we would read the Concession Agreement and Rhode Island law differently from the district court and, hence, would need to confront Omni's argument that the record and law foreclose a finding of negligence. As to Ultimate's first contention, although the issue of Omni's negligence may be moot as to Caruso, the settlement did not

common-law indemnification claims against Ultimate." Alternatively, if we conclude that a factual finding on negligence is necessary and that Omni's negligence is "reasonably subject to dispute," Omni asks that we vacate the district court's judgment and remand for further proceedings on its crossclaims. Omni also argues that the outcome it seeks -- "final judgment in [its] favor on all matters raised on appeal" -- could be achieved by reversing the district court's denial of its motion for summary judgment on Caruso's claims.

eliminate the relevance of Omni's responsibility for Caruso's fall in determining Ultimate's indemnification obligation to Omni. Ultimate's second assertion -- concerning "the relevant question" -- is merely a rehashing of its contract-interpretation argument, which we have rejected.

Given Ultimate's silence on Omni's negligence, we see no reason to prolong this litigation by remanding the case to the district court for further proceedings to address that issue. In other words, we deem Ultimate to have waived any argument against Omni's theory that it is entitled to indemnification because no factfinder could attribute Caruso's fall to negligence by Omni.[10]

**III.**

For the reasons explained above, we vacate the summary judgment for Ultimate on Omni's contractual crossclaim for indemnification and remand the case to the district court with instructions to enter judgment for Omni on that claim after whatever proceedings the court deems appropriate to determine the amount due to Omni. We see no reason to address the district court's earlier ruling denying Omni's motion for summary judgment

---

[10] Ultimate also has not argued that we should reject Omni's entitlement to indemnification because Caruso's claims did not arise from any act or failure to act on its part "in the operation of [its] Business." Indeed, it is undisputed that Caruso's accident occurred when he was walking from a vehicle parked in the valet circle -- a location managed by Ultimate -- to the sidewalk.

- 26 -

on Caruso's claims, which were dismissed following the settlement. Our disposition of the contractual indemnification claim also makes it unnecessary for us to consider Omni's equitable indemnification claim.

Vacated and remanded.  Costs to appellant.